Dueeee, Judge,
delivered the opinion of the court:*
This is a claim for back pay for the difference between the salary of the top step of Grade GS-13 and the second step of the same grade which plaintiffs received as Aeronautical Engineers in the Bureau of Aeronautics of the Navy.
*704 Prior to November 1956 plaintiffs were classified civil service employees assigned to GS-12 positions in the Power Plant Division of the Navy’s Bureau of Aeronautics. On August 10, 1956 the Civil Service Commission had directed that the minimum pay rates for Aeronautical Engineering positions (including plaintiffs) be raised to the top step for each grade, effective September 22, 1956, and plaintiff’s pay rates were raised accordingly to the top grade of GS-12.
In 1956 and 1957 the Power Plant Division was reorganized. Partial implementation of the reorganization was tentatively and unofficially started on December 3,1956 subject to approval by the Navy’s Management Engineering Division.
Under this reorganization plan plaintiffs were each assigned contingently to the position of Senior Turbojet B.. & D. Engineer, with Dianish responsible for General Electric and Fairchild aircraft engines, and Haynes responsible for Allison and Continental aircraft engines. By notice of November 28, 1956, plaintiffs were assigned and thereafter performed the duties of their new billets, i.e., jobs or positions, effective December 3, 1956, until further notice, all subject to ultimate approval of the reorganization plan.
Whereas prior to the reorganization the billets of plaintiffs were charged with responsibility for engine supervision from the time of their (the engines’) qualification tests until they were no longer suitable for service use, and the responsibility for the same engines from the design concept through qualification tests was lodged with other personnel in the Experimental Engines Branch of the Power Plant Division, following the initiating of the reorganization, these dual functions were combined in plaintiffs’ new billets. This was a major purpose of the reorganization.
Plaintiffs were assigned to their new duties effective December 3, 1956, subject to ultimate approval of the reorganization plan and continuing at their old GS-12 salaries. The Management Engineering Division approved the reorganization at some unspecified time, and it was approved by the Chief of the Bureau of Aeronautics on June 7,1957. No reference to proposed salary grades for the new billets was *705 made within the reorganization plan, or in the approval by the Burean Chief. Promotions to Grade GS-13 were first proposed for plaintiffs on July 12, 1957, and approved on July 23, 1957 by the Assistant Bureau Chief. The promotion required the approval of the Personnel Division.
On or about August 20,1957 the Personnel Division classified plaintiffs’ positions as Grade GS-12, thus rejecting the recommendation that they be promoted to Grade GS-13. Effective August 25, 1957 plaintiffs were again assigned to their existing GS-12 grade.
Plaintiffs continued to receive the pay of the top step, Grade GS-12. Plaintiffs appealed the classification of their positions as Grade GS-12, and the appeal was eventually denied by the Chief of Industrial Eolations on August 27, 1958.
In the meantime, the Civil Service Commission on June 20, 1958, by Department Circular No. 793, Supplement No. 45 established new minimum rates of pay for Aeronautical Engineers which had the effect of cancelling the top step of the Grade Salaries Provision which had been authorized on August 10,1956. Supplement 45 did not, however, reduce the salaries of employees (including plaintiffs) who were receiving the salaries of the top step of their grade at the time.
On December 15, 1958, plaintiff Haynes presented a test appeal to the Civil Service Commission. On April 1, 1959, the Commission advised the Navy that plaintiff Haynes’ appeal had been approved. On April 17,1959, plaintiffs were promoted to the second step of Grade GS-13, pursuant to the Navy’s interpretation of Circular 793, Supplement No. 45 of June 10,1958. On April 28, 1959 plaintiff Haynes filed a written claim with the General Accounting Office for the difference between the salary of the second step of Grade GS-13 and the salaries of the top step GS-13. This claim was denied by the Comptroller General on July 16,1959 and plaintiff’s request for reconsideration was also denied on October 15,1959, with this statement:
There is nothing in the file to show that the position you held was downgraded illegally or otherwise. Your case involves the initial administrative classification of the position. As indicated in our settlement of July 16, *706 1959, tbe matter of determining tbe proper allocation of position in tbe departmental service is vested in tbe administrative office concerned, subject to review by tbe Civil Service Commission. See section 502 of tbe Classification Act of 1949, 63 Stat. 954 (5 U.S.C. § 1102). .Tbat section specifically says that the classification actions of the departments “shall be the basis for the payment of compensation and for personnel transactions until changed by certificate of the Commission”. Therefore, the general rule is that when a position has been reclassified to a higher grade as the result of an appeal to the Civil Service Commission, there is no authority to make the salary rate retroactively effective. The effective date of the salary change is governed by Chapter P2-20 of the Federal Personnel Manual referred to in our settlement of July 16, 1959, and Chapter P2-23, 5 CFB 36.1(c). As indicated above, however, the retroactive provision therein covering downgrading actions when an appeal is taken within the prescribed period is not applicable to your case. The position in question was at no time classified by proper authority in grade GS-13 prior to the Commission’s action on your appeal. There is no evidence of record that the classification action originally taken in your case was other than a bona fide action taken under the authority conferred upon your agency. Moreover, one who holds a Federal position is entitled to no more than the salary prescribed for the position or office to which he was appointed regardless of whether he performs the duties of an office of higher grade. See George A. Coleman v. United States, 100 Ct. Cl. 41, and cases there cited.
The petition was filed here on December 16, 1965, asking for the difference between that which plaintiffs received from December 16, 1959 to date of judgment, and that amount which is computed on the basis of the top step of Grade GS-13 from December 16,1959.
Plaintiffs assert, and correctly, that the Division Director and the Assistant Chief of the Bureau officially approved the reorganization plan which specifically assigned GS-13 ratings to plaintiffs, and that they thereafter occupied and performed these billets.
Plaintiffs contend that the action of the Personnel Division classification section on August 20, 1957 lowered their grade allocation from GS-13 to GS-12; in other words, demoted *707 them to GS-12. However, tbe classification actions recommending promotions to Grade GS-13 for plaintiffs required the approval of the Personnel Division of the Bureau of Aeronautics to become effective, and this Division classified plaintiffs’ positions as Grade GS-12, thus rejecting the recommendation for GS-13. Effective on August 25,1957 plaintiffs were assigned to these GS-12. positions.
These conclusions were clearly within the area of competence of the acting officials and classifiers of the Bureau, and the appointment of plaintiffs as GS-12s after the reorganization was clearly within the discretion of the Bureau.
In George L. Coleman v. United States, 100 Ct. Cl. 41 (1943), the court said at p. 43:
There are innumerable instances in the Government service where employees of a lower classification perform the duties of a higher classification, but since the above decided cases we know of no instance where suit for the salary of a higher classification has been brought. The salaries fixed by Congress are the salaries payable to those who hold the office and not to those who perform the duties of the office. One may hold the office only by appointment by his superior, and the law vests in the superior the discretion as to whether or not appointment to the office shall be made. Where the plaintiff has received the salary of the office to which he is appointed he has received all to which he is entitled under the law. The plaintiff in this case has received the salary of the office to which he was appointed, to wit, that of a garageman-driver.
Clearly, until the Civil Service Commission approved plaintiffs’ appeal from the action of April 1, 1959, and they were promoted to Grade GS-13, plaintiffs had never held, in fact and in law, GS-13 positions. Accordingly, plaintiffs could not have been downgraded or demoted from positions they did not hold at the time of their classification and assignment as GS-12 by the Personnel Division in August, 1957.
As stated by the Comptroller General in his final decision, swpra, “the general rule is that when a position has been reclassified to a higher grade as the result of an appeal to the Civil Service Commission, there is no authority to make the salary rate retroactively effective”:

*708
Regulations Involved

5 C.F.E. (1957-1960 ed.) 36.1, promulgated under the authority of 5 U.S.C. 1072,1101,63 Stat. 971, provides:
8 36.1. Effective dates of position-classification actions. (a) Classification actions of a department or agency shall take effect as of the date the action is approved or on a subsequent date specifically stated. They shall not be made effective retroactively, except as provided in paragraph (c) of this section in the case of certain appeals.
# % i'fi sfc if;
(c) Classification decisions resulting from an appeal will take effect not earlier than the date of decision on the appeal and not later than the beginning of the fourth pay period following the date of decision if made by a department, or the receipt of the decision in the department if made by the Commission, unless (1) a subsequent date is specifically stated in the decision on the appeal or in the certificate issued by the Commission, or (2) the original appeal was filed within thirty days after receipt of written notice of action lowering the grade of the position and the corrective action on the appeal raises the grade, in which case the effective date shall be effective retroactively to the date of the appealed action. If the grade is raised on appeal because of duties and responsibilities which were added to the position after the date of the adverse action, the raise in grade cannot be made retroactively. (Sec. 1101,63 Stat. 971; 5 U.S.C. 1072) [17 F.E. 1515, Feb. 19, 1952, as amended at 18 F.E. 4415, July 29,1953].
Subchapter 7-3 of the Federal Personnel Manual, 511-23, provides:
7-3. Eetroacttve Effective Dates for Appeal DeCISIONS
a. Conditions. A classification change resulting from an appeal decision is retroactive to the date of the adverse action when all of the following conditions are met:
(1) The appeal decision reverses, in whole or in part, a classification action that led to a loss in grade or compensation;
(2) The appeal decision is based on duties and responsibilities existing at the time of the adverse classification action rather than on any assigned later; and
*709 (3) The initial appeal, whether to a department or to the Commission, and any subsequent appeals are filed on a timely basis as defined in subchapter 6 of this chapter.
Effective February 24, 1959, Navy Civilian Personnel Instructions 155.8-4, provided:
(4) While any employee has the right to file a classification appeal directly with the Commission, it is in the interest of all * * * concerned that he seek corrective action under the Navy’s appeal procedure first. * * * If such an appeal is made within the Navy, effectuation of any reduction in salary or grade is thereby rendered provisional in nature and will not become final unless and until the appeal is denied. If this appeal is denied, the employee can then appeal to the Commission, and if the Commission decides that the position is incorrectly classified, corrective action will be taken by the Navy retroactively to the effective date of the appealed action.
These regulations make it clear that an appointment will be made retroactive only where the action appealed from had the effect of reducing the employees’ grade, and there was no such action in the present case.
Plaintiffs urge that this was an arbitrary classification action which lowered or downgraded plaintiffs’ established Grade GS-13 billet; “arbitrary” because the Personnel Division classifiers of the Bureau refused to apply the applicable standards. However, the classifiers found that “although Mr. Haynes’ assignment is strong for the GS-12 level, it does not have the breadth either in terms of specialty area or program scope to place it in the GS-13 class”. The Chief of the Bureau of Aeronautics stated, “In summary, this bureau feels that GS-12 is an accurate evaluation. While we recognize some aspects of the standards are outdated, we find no other guidelines which would permit allocation to the requested GS-13 grade level”. At the same time, plaintiffs’ immediate supervisor was classified and assigned to a GS-13 billet, and it was operating practice to keep a one-grade differential between the two positions. The assignment of plaintiffs to Grade GS-12 by the Bureau was not an arbitrary act and was within the realm of discretion, insofar as this court is concerned, even though it turned out to be wrong.
*710 The commissioner in this case has made an ultimate finding that plaintiffs’ claims are barred by the statute of limitations. We need not discuss this point since we have already concluded that plaintiffs are not entitled to recover on the merits, and the petition is thereby dismissed.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner C. Murray Bernhardt, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiffs Haynes and Dianish were at all material times classified civil service employees of the Department of the Navy. Dianish was a Veterans Preference Eligible.
2. Haynes has been a Government employee since August 1934. He has always had performance rating of “very good” or above, and has received numerous commendations and cash awards for his service.
3. Prior to November 1956 plaintiffs were assigned to the GS-12 positions of Aeronautical Gas Turbine Power Plant Development Engineers with responsibility for turbojet aircraft engines from the time of their (the engines’) qualification tests until they were no longer suitable for service.
4. In 1956 and 1957 the Power Plant Division of the Navy’s Bureau of Aeronautics underwent a reorganization under which there were changes in the assignments of Division employees. Partial implementation of this reorganization was tentatively and unofficially started December 3,1956, subject to approval by the Navy’s Management Engineering-Division.
5. Under this reorganization plan the plaintiffs were each assigned contingently to the position of Senior Turbojet It & D Engineer, with Dianish responsible for General Electric and Fairchild aircraft engines, and Haynes responsible for Allison and Continental aircraft engines. By notice of November 28, 1956, plaintiffs were assigned and thereafter performed the duties of their new billets, i.e., jobs or positions, effective December 3, 1956, until further notice, all subject to ultimate approval of the reorganization plan. Pending that approval their salaries remained unchanged-
*711 6. Whereas prior to the reorganization the billets of the plaintiffs were charged with responsibility for engine supervision from the time of their (the engines’) qualification tests until they were no longer suitable for service use (see finding 3, supra), and the responsibility for the same engines from the design concept through qualification tests was lodged with other personnel in the Experimental Engines Branch of the Power Plant Division, following the initiating of the reorganization, these dual functions were combined in the plaintiff’ new billets. This was a major purpose of the reorganization. The Management Engineering Division approved the reorganization at some unspecified time in the form it was proposed by the notice of November 28, 1956. No reference to proposed salary grades for the new billets was made in the reorganization plan or the schematic chart which accompanied it. The Chief of the Bureau of Aeronautics approved the reorganization plan on June 7, 1957, but nothing in the record establishes that his approval specifically sanctioned grade increases. Promotions to Grade GS-13 were first proposed in writing for plaintiffs in classification actions on Position Description forms which were certified, i.e., recommended, on July 12, 1957, by the heads of the respective sections in the Turbojet Engines Branch to which plaintiffs were assigned, and by the Director of the Power Plant Division, as a result of a survey report. An organizational chart of the Turbojet Engines Branch, revised as of July 23,1957, assigned GS-13 ratings to the plaintiffs under the signed approvals of the Director of the Power Plant Division and the Assistant Chief of the Bureau of Aeronautics.
7. The classification actions referred to in the preceding finding recommending promotions to Grade GS-13 for plaintiffs required the approval of the Personnel Division. Plaintiffs had been occupying the billets and performing the duties described in the classification actions since December 3,1956.
8. Pursuant to section 803 (a) of Title VIII of the Classification Act of 1949, as amended (5 U.S.C. §§ 1072,1131,1132, and 1133), the Civil Service Commission had the authority to approve increases in the minimum rates of pay for a given class of employees in Grades GS-13 and above whenever *712 the Commission found that there were insufficient applicants for such employment positions and that such an additional increase in pay would aid recruitment therefor. By Departmental Circular No. 793, Supplement No. 15, dated August 10, 1956, the Civil Service Commission directed that the new minimum pay rate established for Aeronautical Engineering positions at Grades GS-9 through GS-17 (including plaintiffs’) be increased to a rate equivalent to the top step for each grade, effective September 22,1956.
9. In the late spring or early summer of 1957 classification interviews were conducted by Personnel Classifiers of the Bureau of Aeronautics for the billets to which plaintiffs and other aeronautical engineers in the Turbojet Engines Branch had been assigned by the reorganization plan, which plan it is recalled provided Grade GS-13 for the plaintiffs. The interviewers were nontechnical people, had no background in engineering, and were admittedly not familiar with jet or turbojet airplane engines, nor accordingly with the professional and technical demands of the billets occupied by the employees whom they interviewed for promotions, including the plaintiffs. Their opinions were based upon interviews with the subjects of the prospective increases, with various management personnel, and upon a relation of the knowledge thus gained to applicable civil service standards.[1]
10. On or about August 20, 1957, the Personnel Division position classifiers classified plaintiffs’ positions as Aeronautical Power Plant Research Engineers, Grade GS-12, thus rejecting the Power Plant Division’s recommendations that they be promoted to Grade GS-13. Effective on August 25, 1957, plaintiffs were assigned to such positions. Their salaries were set at the top step of Grade GS-12, as required by Departmental Circular No. 793, Supplement No. 15, dated August 10, 1956 (see finding 8, supra). The uncertainty of the position classifiers’ determination as to whether plain *713 tiffs were entitled to Grade GS-13 instead of GS-12 is illustrated by the statements in the explanation for the action in the case of plaintiff Haynes that “It is evident that Position No. 27190 [Haynes’] is stronger than the typical position in this class.”, and “Although Mr. Haynes’ assignment is strong for the GS-12 level, it does not have the breadth, either in terms of specialty area or program scope, to place it in the GS-13 class.” and on March 21,1958, the Chief of the Bureau of Aeronautics, in forwarding Haynes’ classification appeal to the Administrative Officer of the Navy Department for further adjudication, contributed his view that—
In summary this bureau feels that GS-12 is an accurate evaluation. While we recognize some aspects of the standards are outdated we find no other guidelines which would permit allocation to the requested GS-13 grade level.
11. The position classifiers at the same time assigned a Grade GS-13 allocation for the billet occupied by plaintiffs’ civilian supervisor, Ii. Shafer, in contrast to the Grade GS-14 allocation which had been recommended for Shafer by the Power Plant Division. It was the operating program practice to keep a one-grade differential between the Senior Engineers such as plaintiffs and their next level of supervision, Technical Assistant Shafer, in order to get a uniform system progression for advancement.
12. Immediately following receipt of the classification action notice of August 20, 1957, that the billets were graded GS-12 instead of the GS-13 recommended by the Power Plant Division, the plaintiffs and two other engineers similarly situated registered a protest with Branch Chief Colonel White. Mr. Shafer, whose billet was allocated a grade of GS-13, instead of a recommended GS-14, also joined in this appeal. All then filed an appeal with the Director of the Power Plant Division, Captain Mercer, who requested that before any of the appellants took a direct written appeal, he be permitted to personally present the matter through Personnel channels to the Bureau of Aeronautics. The appeals were filed with the plaintiffs’ immediate Navy supervisors rather than optionally with the Civil Service *714 Commission, in accordance with naval procedure and practice prescribed by Navy Civilian Personnel Instruction 155.8-4.
13. In addition to the action taken by Power Plant Division Director Mercer in their behalf, plaintiff Haynes and his supervisor Shafer presented their classification appeals to several personnel classifiers and members of the Personnel Division of the Bureau of Aeronautics. In the fall of 1951 Haynes drafted a written appeal to the Chief of the Bureau of Aeronautics, and submitted the draft to the Personnel Division for approval prior to submission.
14. After rewriting the draft of his formal appeal several times, plaintiff Haynes on January 24, 1958, submitted a formal written appeal of his classification to the Chief of the Bureau of Aeronautics, via the director of the Power Plant Division. It was considered a test appeal covering all employees similarly situated, including plaintiff Dianish. The appeal concluded as follows:
6. To summarize this appeal it is desired to emphasize-several salient points which should provide sufficient justification for the GS-13 classification of my position as set forth in the Power Plant Division’s reorganization. They are:
a. That the basic concept which established the Turbojet Engines Branch within the Power Plant Division was not completely pursued and therefore resulted in an inaccurate appraisal and classification of my position.
b. That because the position was inaccurately appraised a decision has been rendered which is contrary to and sets aside the recommendations and conclusions of ranking military officers and highly competent technical supervisory personnel. Those recommendations having been approved by the Chief of the Bureau of Aeronautics.
c. Classification of two former GS-13 position duties and responsibilities into a single position and downgrading this new position to GS-12.
d. The classifier’s analysis does not appear to adhere to the subject position description and the CSC Specification GS-834-0 guidelines.
e. Consideration or conformance to the concept of “equal pay for substantially equal work” as specified in the Classification Act of 1944 is not evident in the classifier’s report.
*715 7. Should an adverse decision be rendered, I hereby request that this appeal be forwarded to the Executive Office of the Secretary of the Navy, Office of Industrial Eolations.
15. By a first endorsement dated January 24, 1958, the Director of the Power Plant Division approved plaintiff Haynes’ appeal from his classification, “most urgently requesting affirmative action taken”, requesting urgently “that the classification of the subject position be reviewed against the most liberal of interpretations of the applicable standards, to provide the highest possible grade for this very important position.”, observing “It may well be that the classification standards are out of date.”, and describing in technical language the heavy responsibilities and engineering qualifications of the new position.
16. In a memorandum dated March 21, 1958, the Chief of the Bureau of Aeronautics recommended to the Administrative Officer, Navy Department, that plaintiff Haynes’ appeal be denied because “His current position does not appear to meet the Civil Service Commission Standards at the GS-13 level”, and forwarded the appeal to the departmental Civilian Personnel Division and Office of Industrial Relations for further adjudication. The memorandum was signed “By direction” by Ruth L. Olson, who was Head, Bureau Civilian Personnel Branch, Bureau of Aeronautics.
17. In the meantime H. R. Lewis, an engineer employed in a position identical to plaintiffs’ in the Power Plant Division, also appealed the classification action of August 20,1957. In April 1958 Mr. Lewis accepted a top-of-the-grade GS-13 position in another branch of the Power Plant Division and withdrew his appeal. Supervisor Shafer’s appeal was approved in June 1958, and he was granted the salary of a top-of-the-grade GS-14. Plaintiff Haynes also considered transferring to another position which would carry a Grade GS-13 rating. However, confident that his appeal would be successful in spite of the adverse recommendation by the Chief of the Bureau of Aeronautics, plaintiff Haynes withdrew his name from consideration for the GS-13 position.
18. On June 20,1958, the Civil Service Commission issued Departmental Circular No. 793, Supplement No. 45, establish *716 ing new minimum rates of pay for several classes of positions, including Aeronautical Engineers. Tbe new Supplement No. 45 bad tbe effect of canceling tbe top step of tbe grade salary provision wbicb bad been authorized by Supplement No. 15 of August 10, 1956 (finding 8, supra). Tbe new Supplement No. 45 did not, however, reduce tbe salary of an employee who was receiving tbe salary of tbe top step at tbe time.
19. By memorandum dated August 22, 1958, plaintiff Haynes’ immediate superior, Supervisor Shafer (whose own appeal to be classified as Grade GS-14 bad been successful in June 1958, as stated in findmg 17, supra), asked tbe Director of tbe Power Plant Division that action in behalf of Haynes’ appeal be taken to reverse tbe classification action of August 20, 1957. Tbe memorandum presented in considerable detail tbe reasons why tbe classification action should be reversed and tbe appeal allowed.
20. By memorandum of August 27, 1958, tbe Chief of Industrial Relations denied plaintiff’s appeal and suggested that be could appeal to tbe Civil Service Commission.
21. Effective September 7,1958, plaintiff Haynes’ position was reallocated from Aeronautical Power Plant Research Engineer to Aeronautical Gas Turbine Power Plant Development Engineer, with no change in salary.
22. By letter dated December 15, 1958, the test appeal of Haynes was directed to the Chief, Classification Appeals Office, Bureau of Inspection and Classification Audits, Civil Service Commission. In this appeal letter, plaintiff Playnes submitted a detailed rebuttal to tbe Grade GS-13 denial of tbe Navy Personnel officials pointing up tbe complexities of bis position, tbe application of tbe published classification standards to tbe duties being performed, tbe fact that tbe duties in tbe main represented a combination of two former GS-13 positions, pointed out that his position was downgraded to GS-12 in tbe evaluation report, and requested classification Grade GS-13, in accordance with Commission standards.
23. By notice of April 1, 1959, the Commission’s Classification Appeals Office advised plaintiff Haynes, as follows:
We have considered your appeal for reclassification of your position from grade GS-12 to grade GS-13. *717 After consideration of the appeal file and the facts developed in otir desk audit of your position, the conclusion was reacted that your position should be placed in GS-13. Your appeal, accordingly, is hereby approved.
By a separate letter, we have informed the Department of the Navy that your position should be classified as an Aeronautical Gas Turbine Power Plant Development Engineer, GS-834-13.
On the same date, April 1,1959, the Commission’s Classification Appeals Office notified the Navy’s Office of Industrial Relations that the Haynes appeal had been approved, reporting in part—
We have considered the appeal filed by Mr. Vernon L. Haynes, Power Plant Division, Bureau of Aeronautics, Navy Department, for reclassification of his position from grade GS-12 to grade GS-13. Mr. Haynes presently occupies the position of Aeronautical Gas Turbine Power Plant Development Engineer GS-834 — 12, Bureau Number PP-27190. This position has been evaluated by application of the published standards for the Internal Combustion Power Plant Engineering Series GS-834-0. We have concluded that this position merits classification in grade GS-13. The basis for our determination is set forth below. * * *.
24. By Notification of Personnel Action dated April 17, 1959, pursuant to the Civil Service Commission’s decision, plaintiffs were promoted from Grade GS-12, salary $9,530 per annum to Grade GS-13, salary $10,130 per annum, effective April 19,1959, with the titles “Aeronautical Gas Turbine Power Plant Development Engineer”. This action gave plaintiffs the salary of the second step of Grade GS-13, by reason of the Navy’s interpretation of Circular 793, Supplement No. 45 of June 10,1958.
25. Plaintiff Haynes immediately initiated action to obtain the top-of-grade GS-13 salary retroactively to June 7, 1957, the date he contends that his billet was approved under the reorganization, by contacting the Naval Personnel officials, the Navy Judge Advocate General’s Office on April 21, 1959, the Office of Industrial Relations, and the Civil Service Commission. Officials in the Navy and at Civil Service advised plaintiff to seek back salary recovery from the General Accounting Office because all matters concerning salaries *718 came within the province of the General Accounting Office.
26. By letter of April 28, 1959, plaintiff Haynes filed a written claim with the General Accounting Office for back salary, described in paragraph ¶ of the claim as follows:
* * * the difference in pay between the top of grade GS-12 (attained by years in grade) and the top of GS-13, since the reorganization was approved and personnel action was effected; plus the difference in pay between the second increment that I recently entered grade GS-13 and the top of the grade pay for GS-13.
27. On July 16, 1959, the Comptroller General denied plaintiff’s claim, stating in part as follows:
The function of determining the proper allocation of positions in accordance with the principles of classification, is not one within the general jurisdiction of our Office, but is in every case the responsibility of the administrative agency concerned, subject to review by the Civil Service Commission. See 30 Comp. Gen. 156; 37 id. 492.
Chapter P2-20 of the Federal Personnel Manual provides that classification decisions resulting from an appeal to the Civil Service Commission, such as yours, will take effect: (1) not earlier than the date of decision on appeal and (2) not later than the receipt of the decision in the department, unless a subsequent date is specified in the decision on the appeal or in the certificate issued by the Commission. Also, see 5 CFE 36.1 (c).
The established rule is that the performance of duties of a higher classification than that to which the employee is officially assigned does not, in itself, effect a change in classification, nor does it entitle an employee to additional compensation for the duties performed. It has been held in numerous decisions of our Office that administrative changes in salary rates may not be made retroactively effective in the absence of a statute so providing, and that the effective date of salary changes resulting from administrative action is the date on which the action is taken by the administrative official vested with proper authority. See 25 Comp. Gen. 604. In your case, the salary increase resulting from the Commission’s decision of April 1, 1959, was properly made effective April 19,1959.
28. On or about September 8, 1959, plaintiff Haynes requested the Comptroller General to reconsider his decision.
*719 On October 19,1959, the Comptroller General answered plaintiff’s request for reconsideration, stating in part as follows:
There is nothing in the file to show that the position you held was downgraded illegally or otherwise. Your case involves the initial administrative classification of the position. As indicated in our settlement of July 16, 1959, the matter of determining the proper allocation of position in the departmental service is vested in the administrative office concerned, subject to review by the Civil Service Commission. See section 502 of the Classification Act of 1949, 63 Stat. 954 (5 U.S.C. 1102). That section specifically says that the classification actions of the departments “shall be the basis for the payment of compensation and for personnel transactions until changed by certificate of the Commission.” Therefore, the general rule is that when a position has been reclassified to a higher grade as the result of an appeal to the Civil Service Commission, there is no authority to make the salary rate retroactively effective. The effective date of the salary change is governed by Chapter P2-20 of the Federal Personnel Manual referred to in our settlement of July 16, 1959, and Chapter P2-23, 5 CFE 36.1(c). As indicated above, however, the retroactive provision therein covering downgrading actions when an appeal is taken within the prescribed period is not applicable to your case. The position in question was at no time classified by proper authority in grade GS-13 prior to the Commission’s action on your appeal. There is no evidence of record that the classification action originally taken in your case was other than a bona fide action taken under the authority conferred upon your agency. Moreover, one who holds a Federal position is entitled to no more than the salary prescribed for the position or office to which he was appointed regardless of whether he performs the duties of an office of higher grade. See George L. Coleman v. The United States, 100 Ct. Cls. 41, and cases there cited.
29. On December 15, 1965, plaintiffs filed their petition in this court as a continuing claim seeking back salary from December 16, 1959, to the date of judgment. Plaintiffs claim to be entitled to the salary for the top step of Grade GS-13, effective June 7, 1957, and demand the difference between that which they received from December 16, 1959, to date of judgment, and that amount which is computed on the *720 basis of the top step for Grade GS-13 from December 16, 1959.
CONCLUSION 03? LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are not entitled to recover, and the petition is therefore dismissed.

The court acknowledges the assistance it has received from the Report of Trial Commissioner C. Murray Bernhardt.

 unless it can be said that judges and other officials in a judicial capacity are not qualified to decide close questions involving technical subjects beyond their experience, so far as the record shows the interviewers who consulted the plaintiffs were as well-qualified as might be expected for personnel experts lacking technical background in jet and turbojet engines. No regulation has been cited which requires such interviewers to have the technical background mentioned.