**Russell DiNICOLA et al., Appellants,**

v.

**GEORGE HYMAN CONSTRUCTION CO. et al., Appellees.**

**No. 12560.**

District of Columbia Court of Appeals.

Argued Oct. 17, 1978.

Decided Oct. 19, 1979.

James A. Mannino, Washington, D. C., and Joseph H. Koonz, Jr., Washington, D. C., with whom Carolyn McKenney Endress, Washington, D. C., was on the brief, for appellants.

Alan R. Siciliano, Arlington, Va., for appellee George Hyman Construction Co. Thomas A. Farrington, Upper Marlboro, Md., was on the brief, for appellee.

William J. Donnelly, Jr., Washington, D. C., with whom Richard W. Galiher, William H. Clarke and Frank J. Martell, Washington, D. C., were on the brief, for appellee Boatman & Magnani, Inc.

Before KELLY, GALLAGHER and HARRIS, Associate Judges.

GALLAGHER, Associate Judge:

This appeal from summary judgment entered in favor of appellees George Hyman Construction Co. (Hyman) and Boatman & Magnani, Inc. (Boatman) raises an important current question locally in workmen's compensation law: whether an injured employee of a subcontractor may sue the general contractor in negligence where the employee has received compensation benefits from the subcontractor. Hyman (general contractor) was under contract to do construction for an underpass tunnel at L'Enfant Plaza in Washington, D.C. It subcontracted the tile work for this project to Boatman (subcontractor), which in turn employed appellant Russell DiNicola as a tile setter. On August 2, 1972, employees of Hyman partially dismantled the scaffold which Boatman's employees had been using for setting tiles.[1] An open space was left in the scaffold where Hyman's employees had removed a plywood sheet, and appellant fell through this open space and was injured. Boatman carried workmen's compensation insurance, and appellant collected benefits from Boatman. His wife joining him in the action, appellant then sued Hyman, the general contractor, for the alleged negligence of its employees in causing the injuries. Hyman in turn filed a third party action against Boatman for indemnity based on the indemnity clause of their subcontract agreement.[2] Both companies moved for summary judgment, and the trial court ruled that under the Longshoremen's and Harbor Workers' Compensation Act[3] (Longshoremen's Act) a general contractor is immune from tort suit brought by an employee of one of its subcontractors where the injured employee has received compensation benefits from the subcontractor. It granted summary judgment in favor of Hyman, and ruled that this rendered the motions for summary judgment on the indemnity clause moot. Appellant contends the trial court's interpretation of the Longshoremen's Act was in error. We agree and reverse.

The federal Longshoremen's Act, including its amendments by Congress, is the workmen's compensation statute for the

---

1. The contract required Hyman to furnish the scaffold for Boatman's tile work.

2. This clause provided:

    The Sub-contractor agrees to indemnify and save harmless the Owner and General Contractor against loss or expense by reason of the liability imposed by law upon the Owner or General Contractor for damage because of bodily injuries, including death at any time resulting therefrom; accidentally sustained by any person or persons or on account of damage to property arising out of or on account of or in consequence of the performance of this contract, whether or not such injuries to persons or damage to the property are due or claimed to be due to any negligence of the Sub-contractor, his employees, his agents or servants.

3. 33 U.S.C. §§ 901 et seq. (1976).

District of Columbia. D.C.Code 1973, §§ 36–501, –502. Under the Act, compensation is payable to employees for "accidental injury or death arising out of and in the course of employment," 33 U.S.C. §§ 902(2), 903(a), "irrespective of fault as a cause for the injury." *Id.,* § 904(b). The duty to secure compensation insurance is imposed on "every employer." *Id.,* § 904(a). In return for this no-fault remedy, the workman gives up traditional tort remedies against his employer. Section 905(a) provides that "[t]he liability of an employer [under the Act] shall be exclusive and in place of all other liability of such employer . . . on account of such injury." If the employer *fails* to secure compensation insurance as required by the Act, the injured employee has the election of either claiming compensation under the Act *or* maintaining a damage suit at law against the employer. If he elects to sue at law, the employer may not plead as a defense the fellow servant doctrine, assumption of risk, or contributory negligence. *Id.,* § 905(a). Section 933 provides that although compensation is the exclusive remedy for the injured employee, "this provision shall not affect the liability of a person *other than an officer or employee of the employer.*" *Id.,* § 933(i) (emphasis supplied). Furthermore, an injured employee may recover both compensation from his employer and "damages against such third person." *Id.,* § 933(a).[4] Finally, Section 904(a) provides that where the employer is a subcontractor, "the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor *unless the subcontractor has secured such payment*" (emphasis supplied).

The question here is whether a general contractor is the "employer" of the subcontractor's injured employee and thus immune from tort liability under § 905(a), or a "third person" subject to damage suit under § 933, where the subcontractor has secured insurance and paid compensation to the employee, thus relieving the general contractor from his compensation obligation under § 904(a). The trial court reasoned that regardless of who has the *duty* under the Act to secure compensation insurance for the subcontractor's employees, the general contractor ultimately bears the *cost* of it since the subcontractor adds such cost into his bid, and the general contractor should consequently be accorded tort immunity; that since general contractors and subcontractors ordinarily perform construction work in close cooperation, they should bear the same risk of tort liability with respect to injured employees; that imposing tort liability on the general contractor defeats the liability limiting purpose of the Act, since as a result of his duty to indemnify the general contractor under the indemnity clause for damages recovered from the general contractor by the subcontractor's employees, the subcontractor ultimately ends up paying both tort damages *and* compensation;[5] and finally, that providing immunity for the general contractor will bring the District of Columbia in line with the neighboring jurisdictions of Maryland and Virginia.

---

4. Prior to 1959, § 933 required an employee to elect between accepting compensation from his employer and suing a third-party tort-feasor. Section 33 U.S.C. § 933(a) now provides that "[i]f . . . the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person." Additionally, acceptance of compensation acts as an assignment of the third-party damage action to the employer unless the employee commences such action within six months. 33 U.S.C. § 933(b). If the employer brings a successful action against the third party he is entitled to retain a portion of the damage award equal to the compensation paid to the employee, plus legal expenses and one-fifth of any excess. The balance of the recovery is paid to the employee. 33 U.S.C. § 933(e).

5. It was held in *Bland v. L'Enfant Plaza North, Inc.,* 154 U.S.App.D.C. 26, 473 F.2d 156 (1972), and *Moses-Ecco Co. v. Roscoe-Ajax Corp.,* 115 U.S.App.D.C. 366, 320 F.2d 685 (1963), that such indemnity clauses encompass claims by the subcontractor's employees for the general contractor's *own negligence.* In neither case, however, did the parties make the argument that the clause is unenforceable because it frustrates the policy of the workmen's compensation act.

Appellees urge us to adopt the trial court's reasoning. Hyman also contends that since the Act places upon the general contractor the burden of obtaining compensation for the employee or seeing to it that the subcontractor does, it must have been contemplated by Congress that the general contractor has the benefit of tort immunity. Hyman further argues that imposition of tort liability on the general contractor when the subcontractor is insured, but not when the subcontractor is uninsured, will frustrate the Act's purpose of encouraging the general contractor to hire insured, reputable subcontractors. We disagree with the trial court's reasoning and with appellees' contentions.

Cases interpreting the Act prior to the 1972 amendments include *Thomas v. George Hyman Construction Co.*, 173 F.Supp. 381, 383 (D.D.C.1959), in which both the general contractor and the subcontractor carried compensation insurance for the subcontractor's employees. The court stated:

> The law does not accord to the general contractor the choice of either carrying workmen's compensation insurance, or subjecting himself to liability for negligence. The law requires him to carry insurance only if the subcontractor fails to do so. In such a contingency, the general contractor may well be free of all other liability if he in fact carried such insurance. He may not, however, voluntarily take out insurance that the law does not require and thereby secure freedom from liability for negligence. In this instance the subcontractor carried compensation insurance and hence the defendant was not obligated to do so. *Release from common law liability is a benefit accruing from carrying compensation insurance only in case the law imposes a duty to do so.* One may not escape from such liability by taking out insurance that the law does not require. [Emphasis supplied.]

Similarly, in *Probst v. Southern Stevedoring Co.*, 379 F.2d 763, 766–67 (5th Cir. 1967), the court reasoned:

> [T]he provision imposing on the general contractor compensation liability to an employee of a subcontractor is a secondary, protective one. The subcontractor not only is compelled, as we have just shown, to qualify under the Act, but his failure to do so does not reduce his liability to his injured employee. To the contrary, the employee under § 905 has a fielder's choice. He has the right to a . . . suit for damages [against the subcontractor] with no risk from defenses of fellow servant, assumed risk or contributory negligence. Or, if he wishes to eliminate all risks, he can demand payment of compensation under the terms of the Act. About the only time then that the injured worker has to pursue the general contractor under § 904 is when the subcontractor has failed to secure payment of compensation with an approved insurance carrier, § 932, and the subcontractor is financially unable to respond for compensation benefits. The purpose of § 904 is to effectually assure payment of benefits. The general contractor has a secondary, guaranty-like liability. The Act does not make the general contractor the "employer." It is only the "employer" who can get under the immunity umbrella of § 905.

*See Liberty Mutual Insurance Co. v. Goode Construction Co.*, 97 F.Supp. 316, 317 (E.D. Va.1951).

In 1972 Congress amended § 905 as it applied to maritime injuries. Prior to these amendments, under the doctrine of seaworthiness, a vessel was held liable to the employees of stevedoring companies for injuries *regardless of the vessel's fault.* The 1972 amendments abolished this strict liability doctrine but left the vessel liable as a third party for its *negligence* with respect to stevedoring companies' employees.[6] As

---

**6.** Section 905(b) now provides:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone oth-

erwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the

stated in the House Report for these amendments, the intent was

> to place an employee injured aboard a vessel *in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned,* and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as "unseaworthiness," "non-delegable duty," or the like.
>
>     *     *     *     *     *     *
>
> Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise *the same care as a land-based person in providing a safe place to work.* Thus, nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition. [H.R.Rep. No. 92–1441, reprinted in [1972] U.S.Code Cong. & Admin.News pp. 4698, 4703–04; emphasis supplied.]

This legislative history appears to affirm and adopt the prior judicial interpretations of the Act, concluding that a land-based general contractor is liable as a third party for his negligence.[7]

The majority of courts interpreting statutes similar to the Longshoremen's Act have reached similar results. *See Colon Nunez v. Horn-Linie,* 423 F.2d 952 (1st Cir. 1970); *Thomas v. Farnsworth Chambers Co.,* 286 F.2d 270, 273 (10th Cir. 1960); *Anderson v. Sanderson & Porter,* 146 F.2d 58 (8th Cir. 1945); *Miller v. J. A. Utley Construction Co.,* 154 F.Supp. 138 (E.D.Mich. 1957); *Baldwin Co. v. Maner,* 224 Ark. 348, 273 S.W.2d 28 (1954); *Great Western Sugar Co. v. Erbes,* 148 Colo. 566, 367 P.2d 329 (1961); *Blair v. Smith,* 201 Ga. 747, 41 S.E.2d 133 (1947); *Funk v. General Motors Corp.,* 392 Mich. 91, 220 N.W.2d 641 (1974); *Sayles v. Loftis,* 217 N.C. 674, 9 S.E.2d 393 (1940); *Boettner v. Twin City Construction Co.,* 214 N.W.2d 635 (N.D.1974); *Threshermen's National Insurance Co. v. Industrial Commission,* 201 Wis. 303, 230 N.W. 67 (1930). In all these cases the compensation act, like the Longshoremen's Act, imposed on the general contractor the duty to secure compensation insurance *only* if the subcontractor had failed to do so.

Appellees' arguments for a contrary interpretation are unpersuasive. The "ultimate cost" analysis utilized by the trial court was rejected in an analogous context in *Lindler v. District of Columbia,* 164 U.S. App.D.C. 35, 502 F.2d 495 (1974), and we reject it here. The test is "not who may ultimately bear the costs, but rather who does the law require to bear the costs." *Id.* at 39, 502 F.2d at 499, citing *Thomas v. George Hyman Construction Co., supra.* Moreover, the "ultimate cost" reasoning is flawed because in the final analysis the general contractor also passes on the cost of compensation insurance in its overall bid on a job. It seems quite clear that it is the

---

employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsec-

tion shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

7. The suggestion in *Hess v. Upper Mississippi Towing Corp.,* 559 F.2d 1030 (5th Cir. 1977), cited by Hyman, that the 1972 amendments "argue against" suits for a vessel's negligence is wholly unpersuasive in light of this legislative history. Furthermore, *Hess* is not apposite to this case. The court there held that a vessel could not be sued for negligent supervision of an independent contractor by an employee of the latter. The instant claim is not one for negligent supervision of a subcontractor but for Hyman's own negligence in permitting a dangerous condition to exist on the work site.

consumer who ultimately bears the cost of compensation insurance. *See Colon Nunez v. Horn-Linie, supra* at 956.

Hyman's contention that imposition of tort liability on the general contractor will discourage the hiring of reputable, insured subcontractors is not persuasive. The Act itself directly imposes the duty on subcontractors to carry compensation insurance. Failure to do so is a misdemeanor, 33 U.S.C. § 938, and subjects the subcontractor to the risk of a tort suit in which his defenses are significantly limited. "Congress did not leave it to hierarchical inducement to assure that every employer subject to the Act becomes bound by, and qualified under, the Act." *Probst v. Southern Stevedoring Co., supra* at 766.

There is no basis to construe the Longshoremen's Act in uniformity with the acts of Maryland and Virginia. Both Maryland and Virginia impose an absolute duty on the general contractor to carry compensation insurance for the subcontractor's employees. Md.Ann.Code art. 101, § 62 (Michie 1964); Va.Code § 65.1–30 (1973). The Maryland act expressly deems the general contractor the "employer" of the subcontractor's employees. Md.Ann.Code, *supra* § 62. In contrast, the Longshoremen's Act does not provide that the general contractor shall be deemed the "employer" of the subcontractor's employees, and, as noted, it imposed a compensation obligation on the general contractor only where the subcontractor has failed to obtain coverage.

Appellants may pursue a claim in negligence against Hyman. We do not reach the question of the validity of the indemnity clause between Hyman and Boatman with respect to any recovery appellant might obtain from Hyman.

*Reversed and remanded.*