Sylvia A. WHITT, Personal Representative of the Estate of Chauncey W. Whitt, Appellant,

v.

DISTRICT OF COLUMBIA, Municipal Corporation, Appellee.

No. 79–205.

District of Columbia Court of Appeals.

Argued Feb. 28, 1980.

Decided April 9, 1980.

---

George Molnar, Silver Spring, Md., for appellant.

Edward E. Schwab, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief for appellee.

Before KERN, GALLAGHER and FERREN, Associate Judges.

KERN, Associate Judge:

Appellant is the personal representative of the estate of her deceased husband Chauncey Whitt, former employee of the District of Columbia. She alleged in her complaint that the District owed the estate back pay for work Mr. Whitt had performed while "detailed" to a position with a higher grade level than the one to which he was originally appointed. After argument on cross-motions for summary judgment, the trial court entered summary judgment for the District of Columbia. Appellant now contends principally that the grant of summary judgment was improper because it is contrary to a line of decisions by the Comptroller General of the United States in cases similar to this one. We find appellant's arguments unpersuasive and, accordingly, we affirm.

The uncontested facts in this case are as follows. The decedent worked for several years at the Narcotics Treatment Administration (NTA), in the District of Columbia's Department of Human Resources, at the grade level of GS9, step 4 (GS9–4). In April 1973 his supervisor detailed Whitt to the position of Acting Chief of the Administrative Support Division (later redesignated the Support Services Division) of the NTA. Although there is a dispute as to whether the position to which Whitt was detailed had a higher grade level than GS9–4,[1] it is undisputed that Whitt was still paid a GS9–4 salary after he was detailed to the Acting Chief position. Although he requested a promotion to that position, Whitt continued in this detail until his resignation in May 1976.

Appellant relied on these facts in seeking summary judgment in her favor, arguing to the trial court that similar facts had led to a decision by the Comptroller General to award back pay in cases like her husband's. She cited *Matter of Turner and Caldwell*, 55 Comp.Gen. 539 (1975) (*Turner-Caldwell*), and *Matter of Reconsideration of Turner and Caldwell*, 56 Comp.Gen. 427 (1977) (*Reconsideration of Turner-Caldwell*). In those cases the Comptroller General, relying on provisions of the Federal Personnel Manual (FPM), ruled that federal employees detailed to higher grade positions for more than 120 days, without approval of the Civil Service Commission, are entitled to retroactive promotions with back pay from the 121st day of the detail until the detail is terminated. *Reconsideration of Turner-Caldwell, supra* at 427–28, 431.

In its cross-motion for summary judgment, the District of Columbia relied upon the settled rule that a government employee is entitled to compensation only for the position to which he or she was actually appointed, even if performing duties of a higher grade position. It discounted the importance of the *Turner-Caldwell* decisions to this case, arguing that those Comptroller General decisions were not in harmony with

---

1. The trial court disposed of the case without addressing this issue. We do likewise; in the discussion which follows, we assume without deciding that Whitt's detail was to a position with a higher grade level than his original position.

a recent decision of the United States Supreme Court. It further argued that the *Turner-Caldwell* decisions focused only on federal "competitive service" employees, governed by the Federal Personnel Manual and federal law, rather than on "excepted service" District employees, governed by the District Personnel Manual (DPM). The trial court, without opinion, granted the District's motion for summary judgment and denied appellant's motion for summary judgment.

Appellant now contends that the trial court erred by not following the Comptroller General's *Turner-Caldwell* decisions. Those decisions, appellant argues, correctly interpret provisions of the FPM substantively identical to those of the DPM.[2] Accordingly, she claims, the trial court should have ordered a retroactive temporary promotion to the position in which the decedent worked until his resignation and awarded back pay to Whitt's estate.

■ We reject these arguments by appellant and conclude that the trial court did not err in rejecting the *Turner-Caldwell* approach. Initially, we draw attention to two basic principles of District and federal personnel management. The first is that an employee is only entitled to be compensated for the position to which he or she was appointed; if performing duties of a higher grade level, compensation at that higher level is possible only on promotion or by job reclassification. *United States v. Testan*, 424 U.S. 392, 402, 406, 96 S.Ct. 948, 955–957, 47 L.Ed.2d 114 (1976); *Dianish v. United States*, 183 Ct.Cl. 702, 707–09 (1968); *Coleman v. United States*, 100 Ct.Cl. 41, 43 (1943). The second principle is that the

decision to promote an employee is discretionary, and unless it can be shown that a failure to promote an employee violates some mandatory duty, retroactive promotion and back pay cannot be awarded. *United States v. Testan, supra*, 424 U.S. at 402–03, 96 S.Ct. at 955–956.

■ In view of these principles, Mr. Whitt's estate is not entitled to back pay for services he performed while detailed to a higher grade position.[3] In a similar case, the Court of Claims has held that a federal employee detailed for 28 months to a higher grade position was not entitled to a retroactive temporary promotion or to back pay. *Peters v. United States*, 208 Ct.Cl. 373, 534 F.2d 232 (1975). The Court of Claims has recognized the continuing viability of the *Peters* decision in later cases. *See, e. g., Goutos v. United States*, 212 Ct.Cl. 95, 552 F.2d 922 (1976).

■ As to the *Turner-Caldwell* decisions, we have not been shown why the Superior Court should consider itself bound by decisions of the Comptroller General, even if those decisions interpret provisions of the FPM substantively similar to those of the DPM. We note that the District of Columbia adopted the regulations in its personnel manual concerning temporary details in 1974, before the Comptroller General announced his *Turner-Caldwell* approach. At that time, the Comptroller General's position was that the FPM did *not* require a temporary retroactive promotion or back pay for federal employees improperly detailed to higher grade positions for more than 120 days. *Matter of Green*, 52 Comp. Gen. 920 (1973). When one jurisdiction

---

**2.** Counsel for the District of Columbia conceded at oral argument that the FPM and DPM provisions regarding temporary details were indeed quite similar at the time in question.

**3.** We do not suggest that Mr. Whitt was not entitled to seek relief from an excessively long detail which the DPM obviously discourages. Had he wished to do so, he could have sought advice from the D.C. Director of Personnel, whose permission is required for details lasting

more than 120 days. Alternatively, Whitt could have stopped performing the duties of the higher grade position and, instead, resume the duties of the GS9–4 position to which he was appointed. On the other hand, Whitt may have declined to take either of these courses of action because his detail to the Acting Chief position made him an obvious candidate for Chief of the Support Services Division. (Record at 48).

adopts in similar form a regulation of another, it is deemed to have adopted prior constructions of the regulation in the jurisdiction in which it originated; no similar presumption exists as to subsequent constructions in the originating jurisdiction. 2A Sutherland, Statutory Construction, 329–31 (1973). Therefore, since the District adopted regulations similar to those in the FPM when the *Matter of Green* decision reflected the view of the Comptroller General, we do not consider his 1975 reversal of the *Green* approach binding on the Superior Court in interpreting the regulations in the DPM concerning personnel details exceeding 120 days.

Moreover, we do not find the Comptroller General's reasoning in the two *Turner-Caldwell* decisions to be compelling. The 1975 treatment of that case turned largely on the deference paid by the Comptroller General to the Civil Service Commission Board of Appeals and Review, which had (according to the Comptroller General) changed its interpretation of the FPM. *Turner-Caldwell, supra* at 451–52. In 1977, despite requests by the Executive Director and the General Counsel of the Civil Service Commission that the Comptroller General reverse his *Turner-Caldwell* decision, the Comptroller General in *Reconsideration of Turner-Caldwell*, affirmed the 1975 decision.[4] *Reconsideration of Turner-Caldwell,*

*supra* at 428–29, 430. In so doing, the Comptroller General attempted to distinguish the Supreme Court's *Testan* decision (issued after *Turner-Caldwell* and before *Reconsideration of Turner-Caldwell*) by declaring that *Testan* was limited to the issue of improper classification," and that, therefore, the Court's interpretation of the Back Pay Act 5 U.S.C. § 5596 (1979), was merely dictum.

In our view, the issue in *Testan* was whether the Back Pay Act allows back pay to employees who, because of improper job classification, had *performed duties of one grade level while receiving the salary of a lower grade level*; the issue in *Turner-Caldwell*, as in the present case, was whether the Back Pay Act[5] allows back pay to employees who, because of excessively long details, had *performed duties of one grade level while receiving the salary of a lower grade level*. Under these circumstances, we cannot ignore the Supreme Court's unequivocal statement, supported by the clear language of the statute,[6] that

> the Back Pay Act . . . was intended to grant a monetary cause of action only to those who were subjected to a reduction in their duly appointed emoluments or position. [*United States v. Testan, supra* 424 U.S. at 407, 96 S.Ct. at 957.][7]

We thus conclude that the trial court did not err in declining appellant's invitation to

---

4. In *Reconsideration of Turner-Caldwell,* the Comptroller General also affirmed his holding in *Marie Grant,* 55 Comp.Gen. 785 (1976), which followed the 1975 *Turner-Caldwell* approach. *Reconsideration of Turner-Caldwell, supra* at 430.

5. Appellant seems to argue that she need not rely on the Back Pay Act at all, but may instead rely for monetary relief on provisions in the DPM calling for temporary promotions of employees. We find that claim without merit. The DPM provisions cited by appellant do not expressly, or even impliedly, provide grounds for monetary relief. She must, in seeking back pay, rely on the express provisions for such an action found in the Back Pay Act. *See, e. g., United States v. Testan, supra* at 399; *Donovan v. United States,* 580 F.2d 1203, 1206 (3d Cir. 1978).

6. The Back Pay Act, 5 U.S.C. § 5596(b) (1979), provides in pertinent part that:

> An employee of an agency who . . . is found . . . to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or part of the pay, allowance or differentials of the employee [is entitled to back pay and other relief].

7. *See also Donovan v. United States,* 580 F.2d 1203 (3d Cir. 1978):

> The unwarranted failure timely to promote plaintiff in accordance with Army regulations, though a wrongful act, is not the type of personnel action calling for back pay under the Back Pay Act, for the action has not caused plaintiff to suffer any reduction in grade but has only delayed his advancement to a higher level.
>
> . . . [He] received the proper salary for the position in which he was employed.

follow the Comptroller General's *Turner-Caldwell* approach and award back pay to appellant.

*Affirmed.*

[He claims] that he should have been paid at a higher rate for a position to which he should have been but was not appointed. "The established rule is that one is not enti-tled to the benefit of a position until he has been duly appointed to it." [*Id.* at 1207–08, quoting *Testan, supra.*]