Clarence MEIGGS, et al., Appellants,

v.

ASSOCIATED BUILDERS, INC., and
Pineda–Heller Electric Company,
Inc., Appellees.

OMNI CONSTRUCTION,
INC., Appellant,

v.

Sidney FEATHERSTONE, et ux., and
Andrew S. Appling, et ux., Appellees.

KBR CORPORATION, Appellant,

v.

Harry HOBBS, et al., Appellees.

Terry FRAZIER, et al., Appellants,

v.

FAITH CONSTRUCTION COMPANY,
et al., Appellees.

Nos. 85–577, 86–100, 86–125,
86–185 and 86–257.

District of Columbia Court of Appeals.

Argued Aug. 19, 1986.
Decided July 18, 1988.

Patrick M. Regan and Marc Fiedler, with
whom Joseph H. Koonz, Jr., Roger C. John-
son, and Mark J. Brice, Washington, D.C.,
were on the brief, for appellants Meiggs
and Frazier.

Walter A. Smith, Jr., with whom Vincent
H. Cohen, Robert B. Cave, and David F.
Grady, Washington, D.C., were on the
brief, for amicus curiae Washington Metro-
politan Area Transit Authority.

Ronald G. Guziak and Keith M. Bonner,
Washington, D.C., were on the brief, for
appellant Omni Const., Inc.

Edwin A. Sheridan, Fairfax, Va., was on
the brief, for amicus curiae KBR Corp.

James C. Gregg and Jack E. Rossotti,
Washington, D.C., were on the brief, for
appellee Associated Builders, Inc.

Geoffrey S. Gavett, Rockville, Md., was
on the brief, for appellee Pineda–Heller
Elec. Co., Inc.

Peter J. Vangsnes, Robert P. Enderle,
and H. Vincent McKnight, Jr., Washington,
D.C., were on the brief, for appellees
Featherstone, Appling and Hobbs.

Joseph P. Dyer and John A. Sutherland,
Jr., Fairfax, Va., were on the brief, for
appellee Faith Const. Co.

Before MACK, ROGERS and
STEADMAN, Associate Judges.[1]

---

1. Associate Judge Steadman was selected as a
member of the division to replace Senior Judge
Nebeker, who withdrew from active judicial ser-
vice on December 11, 1987.

MACK, Associate Judge:

These five separate appeals, consolidated for our consideration, present an identical issue for resolution: do sections 5(a) and 5(b) of the District of Columbia Workers' Compensation Act of 1979, 27 D.C. Reg. 2503, 2507–08 (1980) (as codified at D.C. Code § 36–304 (1981) (hereinafter "1979 Act"), grant general contractors immunity from tort liability in suits brought by injured employees of subcontractors, where the subcontractors have secured payment of workers' compensation to the employees? The general contractors, in claiming immunity, cite to the Supreme Court's decision in *Washington Metropolitan Area Transit Authority v. Johnson*, 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984), as binding and persuasive precedent. The injured employees rely primarily upon the plain language of the statute and legislative history of the 1979 Act. We hold that general contractors, under these circumstances, are not entitled to statutory immunity under the District of Columbia Workers' Compensation Act.

Since the issue here is purely one of law, it is unnecessary to recite in detail the facts peculiar to each case. Rather, it suffices to say that the plaintiffs [2] were employed by various subcontractors when they each sustained a work-related injury on a construction job site. The subcontractors, who had procured workers' compensation insurance for their employees, then secured the payment of such compensation to the injured plaintiffs who had each filed claims for benefits pursuant to the provisions of the Workers' Compensation Act of 1979. The injured plaintiffs thereafter brought independent negligence actions against, among others, the respective general contractors on the construction projects where their injuries were sustained. In the *Meiggs* and *Frazier* negligence suits, Judges Holmes–Winfield and von Kann respectively, entered summary judgment in favor of the general contractors on the

basis of statutory immunity and the employees appealed. In *Hobbs, Appling* and *Featherstone*, Judges Weisberg and Kessler, respectively, determined that the statute did not bar suit and denied the general contractors' motions for summary judgment.[3] This court subsequently granted their applications to appeal the denial of such motions.

## I.

The issue in this case arises as a result of the language in Section 5(a)—(b) of the 1979 Act:

(a) The liability of an *employer* prescribed in § 36–303 shall be exclusive and in place of all liability of such *employer* to the *employee*....

(b) The compensation to which an *employee* is entitled under this chapter shall constitute the *employee*'s exclusive remedy against the *employer*.... [Emphasis added.]

In arguing that "employer" should be interpreted to include "general contractor" when the underlying statute has not imposed an absolute duty on the contractor to secure payment of compensation, the contractors cite *Washington Metropolitan Transit Authority v. Johnson, supra.* The employees, on the other hand, look for support to this court's decision in *DiNicola v. George Hyman Construction Co.*, 407 A.2d 670 (D.C.1979), where we held that a general contractor is not an "employer" immune from liability under the provisions of the District of Columbia Worker's Compensation Act where the subcontractor secures insurance and pays compensation to the employee.

*Johnson*, like *DiNicola*, involved injuries to non-maritime workers in the District of Columbia and therefore at issue in the case was the proper interpretation of the District of Columbia Workers' Compensation Act of 1928 (codified as amended at D.C. Code §§ 36–501 to –502 (1973) (hereinafter

---

**2.** We use the terms plaintiff(s) and employee(s) synonymously throughout this opinion. We have not overlooked the fact that certain plaintiffs in these actions are actually spouses of the injured employees.

**3.** Judge Kessler decided both *Appling* and *Featherstone*.

"1928 Act")). In *Johnson*, however, the Supreme Court made only a passing reference to the 1928 Act and then proceeded to interpret the Longshore and Harbor Workers' Compensation Act of 1927, 44 Stat. 1424 (codified as amended at 33 U.S.C. § 901 to 950 (1982) (hereinafter "LHWCA")). The Court concluded that a general contractor is an employer for purposes of the LHWCA and therefore enjoys statutory immunity.

In our view, *Johnson*, is not binding precedent in the instant appeals. While there is room for argument as to what law was the subject of the Supreme Court's interpretation in *Johnson*,[4] one thing is undisputed: the Supreme Court *did not* interpret the District of Columbia Workers' Compensation Act of 1979. Equally clear is the fact that we are today called upon to interpret the 1979 Act. Since the principle of *stare decisis* has no application to a decision construing a different statute, this court is not bound by *Johnson*. On a question of purely local law, this court is undeniably the final arbiter. D.C.Code § 11–102 (1981) ("The highest court of the District of Columbia is the District of Columbia Court of Appeals."). *See also Gillis v. United States*, 400 A.2d 311, 313 (D.C.1979) (D.C.Court of Appeals is "the final expositer of the local law of the District of Columbia."); *Reichman v. Franklin Simon Corp.*, 392 A.2d 9 (D.C.1978).

*Johnson* also has very little, if any, persuasive value in the context of these cases. Shortly after the Supreme Court's decision in 1984, Congress passed amendments to the LHWCA with the express purpose of divesting *Johnson* of any past or subsequent precedential effect. Congress concluded that *Johnson* did "not comport with the legislative intent of the [LHWCA] nor its interpretation from 1927 through 1983." H.R.Conf.Rep. No. 1027, 98th Cong., 2nd Sess. 24 (1984), *reprinted in* 1984 U.S. Code Cong. & Admin.News 2734, 2771, 2774. This repudiation of the *Johnson* interpretation by the Congress is telling. Significantly, the reasoning underlying *Johnson* had been rejected by our own court in *DiNicola, supra*, just six months before the Council of the District of Columbia passed the 1979 legislation.

## II.

Freed of the encumbrances flowing from contradictory judicial interpretations,[5] and strained reliances on *Johnson*, the issue is a simple one. Who is an employer immune from tort liability under the provisions of the District of Columbia Workers' Compensation Act of 1979?

The starting point for analysis is, of course, the language of the statute itself. The statute makes the meaning of "employer" abundantly clear. Under the Act:

> "Employer" includes any individual, firm, association, or corporation, or receiver, or trustee of the same, or the legal representative of a deceased employer, using *the service of another for pay* within the District of Columbia.

D.C.Code § 36–301(10) (1981) (emphasis added).[6] A reasonable reading of the statute leads to the conclusion that the "ser-

---

4. It might be noted that the Supreme Court in *Johnson* never engaged in an analysis of what law governed the action nor did it consider whether the question raised was "local" or federal. Significantly, *Johnson* cites our decision in *DiNicola v. George Hyman Construction Co., supra*, without expressing any disapproval whatsoever of its reasoning or result. *See Johnson, supra*, 467 U.S. at 933–34, 104 S.Ct. at 2832–33. We reserve for another day a comprehensive development of this issue.

5. In addition to the disagreement in the five present cases, there is a comparable division in the lower federal courts of the District of Columbia. In *Ford v. United States*, No. 84–3082 (D.D.C.1985) (memorandum order), and *Stokes*

*v. George Hyman Construction Co.*, No. 84–1418 (D.D.C.1985) (memorandum order), the district court for the District of Columbia held that a general contractor is entitled to immunity. In *Allen v. United States*, 625 F.Supp. 841 (D.D.C. 1986), the court concluded that a general contractor is not entitled to immunity.

6. Justice Marshall, writing for the majority in *Washington Metropolitan Area Transit Authority v. Johnson, supra*, pointed out that the immunity provision of the LHWCA "speaks in terms of 'an employer' and, at least as far as the employees of subcontractors are concerned, a general contractor does not act as an employer." *Johnson, supra*, 467 U.S. at 933, 104 S.Ct. at 2832.

vice of another" to which the definition refers is the service of an "employee." The Act defines employee:

> "Employee" includes every person, including a minor, in the service of another *under any contract of hire or apprenticeship,* written or implied, in the District of Columbia....

*Id.* § 36–301(9) (emphasis added). Thus, an employer and its employee enjoy a written or implied contractual relationship under which the services of the employee are exchanged for payment from the employer.

In the consolidated cases here, the general contractors and plaintiffs were not involved in an employer/employee relationship. For example, in *Meiggs,* Associated Builders did not hire Meiggs, did not pay Meiggs, and held no contract whatsoever with Meiggs. Likewise, Meiggs did not render service for Associated Builders. Rather Meiggs rendered service for Pineda–Heller, who hired Meiggs, paid Meiggs and exercised exclusive control over him. Pineda–Heller was Meiggs' employer. Under a literal interpretation of the immunity provision, no immunity ran to Associated Builders in regard to Meiggs.[7] Indeed, in some jurisdictions, the inquiry would be at an end and immunity would simply be rejected. *Fiore v. Royal Painting Co.,* 398 So.2d 863, 865 (Fla.Dist.Ct.App.1981); *Sweezey v. Arc Electrical Construction Co.,* 295 N.Y. 306, 310–11, 67 N.E.2d 369, 370–71 (1946).

Questions regarding the literal interpretation of the meaning of the word "employer" in the immunity provision arise only out of the interplay between the immunity provision and the liability provision:

> (b) Every employer subject to this chapter shall be liable for compensation for injury or death....
>
> (c) In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor *unless* the subcontractor has secured such payment.

*Id.* at § 36–303(b)–(c) (emphasis added). Under these provisions, a general contractor incurs a secondary liability to secure payment of workers' compensation when a subcontractor has not secured payment. Consequently, if a subcontractor defaults, a general contractor can argue that unless it is *constructively* deemed the "employer" of the subcontractor's employees for purposes of the immunity provision, it will incur double liability: workers' compensation and common law tort liability. The argument continues that in light of results unfair to the general contractor, the literal interpretation of the meaning of the word "employer" in the immunity provision (and all other provisions in the 1979 Act) must give way.

Such an argument, however, has force only when the general contractor is legally required to secure payment of compensation to a subcontractor's employees. Otherwise, double liability is not a possibility. Indeed, double liability to Associated Builders was not a possibility here. The subcontractor, Pineda–Heller, "secured" payment of compensation to its employee Meiggs and thus fulfilled its statutory obligation under § 36–303(b)v(c). Additionally, Associated Builders did not "secure" payment of compensation to Meiggs under its contingent § 3t6303(c) duty. Consequently, double liability was not possible, and no reason has been advanced nor exists for engaging in the legal fiction of constructively deeming Associated Builders Meiggs' "employer" when it is clear Pineda–Heller is Meiggs' *actual* employer. This is likewise true of the other subcontractors here since none defaulted on their statutory obligations.

Thus, even if it is sometimes appropriate to constructively deem a general contractor the "employer" of a person clearly not its employee, the *most* that follows is that such creative statutory interpretation is appropriate *only* when the actual employer— the subcontractor—defaults on its statutory obligation, and the general contractor steps in to secure payment. *See Johnson, supra,* 467 U.S. at 945, 104 S.Ct. at 2838 (Rehnquist, J., dissenting).

---

**7.** This reasoning applies with equal force to the other decisions on appeal.

This conclusion is buttressed by looking at the use of "employer" in the remainder of the 1979 Act. The word "employer" is used throughout the Act. Section 36–307 specifies the medical services the "employer" is required to furnish; § 36–313 requires employees to give their "employers" notice of injuries; and § 36–335(b) requires employees to assign their rights to third party damages to their "employers" if the employee accepts workers' compensation. If, regardless of subcontractor default, the general contractor were deemed the "employer" for all these purposes, notice would twice be required, "[b]oth the contractor and the subcontractor would be directed to make the payments required by [§ 36–307], and both would simultaneously be entitled to the assignment of the injured worker's right to recover damages from third parties under § [36–335 (b)]. Everything directed by the Act would be done in duplicate." *Johnson, supra,* 467 U.S. at 944–45, 104 S.Ct. at 2838 (Rehnquist, J., dissenting). If, however, the general contractor were deemed the "employer" of the subcontractor's employees only when the subcontractor defaulted, no duplication would occur. In the appeals before us, it is undisputed that Associated Builders, Faith Construction Co. and the other corporate defendants were "contractors" within the meaning of D.C.Code § 36–303(c) (1981).[8] It should likewise be clear that they are "third persons"—not contractors within the meaning of that provision who can be equated with the status of immunized employers by virtue of the failure of the subcontractors to secure payment.

## III.

### A.

Not only is our conclusion consistent with the plain language and overall structure of the 1979 Act, it is also consistent with the intent of the Council of the District of Columbia when it enacted this legislation.

Just recently, this court reiterated the local adaptation of what is a universally recognized principle of statutory construction:

> When a local provision is borrowed directly from a federal statute, the Council [of the District of Columbia] is presumed to have borrowed the judicial construction thereof as well.

*Hughes v. District of Columbia Department of Employment Services,* 498 A.2d 567, 571 n. 8 (D.C.1985) (citing *Whitt v. District of Columbia,* 413 A.2d 1301, 1303–04 (D.C.1980)). This "local" version takes its origin from the cardinal rule of statutory construction that when a legislature adopts a statute that is modeled after one in effect in another jurisdiction, the legislature is deemed to have adopted as well the judicial constructions of the statute in the jurisdiction in which it originated. *Yates v. United States,* 354 U.S. 298, 309, 77 S.Ct. 1064, 1071–72, 1 L.Ed.2d 1356 (1957); *Carolene Products Co. v. United States,* 323 U.S. 18, 26, 65 S.Ct. 1, 5–6, 89 L.Ed. 15 (1944); *see generally* 2A SUTHERLAND, STATUTORY CONSTRUCTION § 51.02 (Sands 4th ed. 1984). It is particularly appropriate that this presumption be applied in this controversy, where the prior judicial constructions "adopted" are our *own;* that is, our interpretations of provisions of acts of Congress which are incorporated verbatim into the Council's new legislation.

Of course, as this court has emphasized, this rule applies only to such judicial constructions as have been placed on the "borrowed" statute *prior* to its enactment by the jurisdiction adopting it. *Whitt, supra,* 413 A.2d at 1303–04. Any subsequent interpretations by this court will be binding on us; any subsequent interpretations by another court carry no precedential value.

It is important, therefore, to review the legal landscape facing the Council when it debated and ultimately enacted the 1979 Act. At that time, three cases had explicitly interpreted the immunity provision of

---

**8.** In *Johnson,* the Supreme Court relied on the lower courts' findings that WMATA was a "contractor" within the meaning of the liability provisions. *Johnson, supra,* 467 U.S. at 928 n. 5, 104 S.Ct. at 2829 n. 5. There "WMATA elected to assume responsibility for securing workers' compensation insurance for all Metro construction employees." *Id.* at 929, 104 S.Ct. at 2830.

the federal LHWCA as it applied to the District of Columbia through the 1928 incorporation. In *Liberty Mutual Insurance Co. v. Goode Construction Co.,* 97 F.Supp. 316 (E.D.Va.1951), a federal court held that a general contractor was a "third person" under the 1928 Act and thus could be sued by the subcontractor's employee. In *Liberty Mutual,* the subcontractor carried workers' compensation insurance. The court observed that the employee

> made no contract of employment with the defendant [the general contractor], that his contract was with the subcontractor, that the terms of his contract did not foreclose his right against anyone save his employer, and that his agreement is not to be curtailed *except by law or his consent and neither has done so.*

*Id.* at 317 (emphasis added).

Subsequently, in *Thomas v. George Hyman Construction Co.,* 173 F.Supp. 381 (D.D.C.1959), the federal District Court for the District of Columbia, which at the time had jurisdiction over local matters, denied immunity to a general contractor where both the general contractor and the subcontractor had secured workers' compensation insurance. The court eloquently set forth the rationale behind its decision to give the statute its plain language interpretation:

> The law requires [the general contractor] to carry insurance only if the subcontractor fails to do so. In such a contingency, the general contractor may well be free of all other liability if he in fact carried such insurance. He may not, however, voluntarily take out insurance that the law does not require and thereby secure freedom from liability for negligence.... Release from common law liability is a

benefit accruing from carrying compensation insurance only in case the law imposes a duty to do so. One may not escape from such liability by taking out insurance that the law does not require. *Id.* at 383.

Finally, in *DiNicola v. George Hyman Construction Co., supra,* this court reaffirmed the principles enunciated in *Liberty Mutual* and *Thomas v. George Hyman Construction Co.* The *DiNicola* court held that a general contractor is not an "employer" immune from liability under the provisions of the Act where the subcontractor secures insurance and pays compensation to the employee. *Id.* at 672. The *DiNicola* court, not satisfied with simply supporting its interpretation by reference to prior interpretations of the 1928 Act, set forth the substantial body of federal and state cases supporting its plain language interpretation. Citing those cases, the *DiNicola* court found that "[t]he majority of courts interpreting statutes similar to the [LHWCA] have reached similar results" to the one the court reached. *Id.* at 674.[9]

Two other cases, not directly on point, give further evidence of the substantive body of law facing the Council when it engaged in the difficult task of drafting a workers' compensation statute for the District. In *Lindler v. District of Columbia,* 164 U.S.App.D.C. 35, 502 F.2d 495 (1974), the United States Court of Appeals for the District of Columbia Circuit held that the Workers' Compensation Act of 1928 did not bar suit against the District of Columbia by employees of *independent* contractors hired by the District for municipal projects.

---

**9.** This comports with the Fifth Circuit's 1967 description of the general terrain:

> The two main lines of decision—(1) general contractor may be sued, (2) the general contractor may not be sued—arise out of compensation statutes which, in turn, follow two principal divisions. In the first are those statutes which require the general employer or general contractor to see that any and all independent contractors or subcontractors carry compensation insurance or suffer statutory liability for compensation to the employees of the subcontractors. In the second category are those which directly impose liability

on the general employer or the general contractor, as the case may be, for injuries to the employees of any independent contractors or subcontractors.... Under the first type of statute, the state case law generally denies to the general contractor the employer's immunity and permits third party suit against him. Under statutes of the second kind imposing a direct liability, the cases with a good deal of good sense regard the general contractor as the vicarious employer and extend the employer's immunity to him.

*Probst v. Southern Stevedoring Co.,* 379 F.2d 763, 765–66 (5th Cir.1967) (footnote omitted).

Furthermore, in *Martin v. George Hyman Construction Co.*, 395 A.2d 63 (D.C.1978), this court assumed, without discussion, that an injured employee of a subcontractor was permitted to maintain a negligence action against a general contractor.

Thus, on May 6, 1980, when the Council passed the 1979 Act, every case interpreting the immunity provisions of the 1928 Act unambiguously rejected contractor immunity if the subcontractor fulfilled its obligation to secure payment of worker's compensation. Indeed, *DiNicola* was one of three identical judicial constructions of the immunity provision, two of which were on the books long before the 1979 bill was ever introduced.

### B.

The intent of the Council of the District of Columbia can also be inferred from the affirmative legislative record surrounding the passage of the 1979 Act. When the Council drafted the 1979 Act, it explicitly reviewed the Maryland Workers' Compensation Act. *See* COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT OF THE COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL NO. 3–106: THE "DISTRICT OF COLUMBIA WORKERS' COMPENSATION ACT OF 1979" at 4, 6, 10, 13 (January 29, 1980). The Maryland Act includes a provision subjecting a principal contractor to an absolute duty to secure workers' compensation. MD.ANN.CODE art. 101, § 62 (1985). Moreover, it deems a principal contractor an employer for purposes of the Act: "[I]n the application of this article, reference to the principal contractor shall be substituted for reference to the employer." *Id.* Despite the fact that the Council modeled some of the 1979 Act provisions after those in the Maryland Act, *compare* D.C.Code § 36–308 to –311 (1981) *with* MD.ANN.CODE art. 101, § 36 (1981), it did not engraft onto our 1979 Act the provision explicitly substituting the words "principal contractor" for the word "employer." Rather, it chose to retain the language of the 1928 Act which granted immunity only to "employers."

### IV.

Our conclusion is also consistent with the philosophy underlying workers' compensation schemes. That philosophy has commonly been described as a *quid pro quo* on both sides: in return for the purchase of insurance against job-related injuries, the employer receives tort immunity; in return for giving up the right to sue the employer, the employee receives swift and sure benefits. Interpretation of the 1979 Act to confer immunity on general contractors would transform the underlying philosophy of workers' compensation into a *duo quidem pro sole unum quo*. The employee would be required to give up at least two immunities—one to the general contractor and one to the subcontractor—for the price of one. The bargain becomes more unattractive with every "sub" prefixed to the word "contractor." Employees unfortunate enough to be employed by a sub-sub-sub-subcontractor find that, in addition to the employer, four possibly negligent actors are immune from liability. *See Johnson, supra*, 467 U.S. at 927 n. 3, 940 n. 14, 104 S.Ct. at 2829 n. 3, 2836 n. 14 (subcontractors and sub-subcontractors of voluntarily insured general contractors are also immune).

Principles of statutory construction further reinforce our conclusion. The first of these principles is that statutes are to be strictly construed against the abrogation of common law rights unless that intent is clearly expressed. *Dell v. Department of Employment Services*, 499 A.2d 102, 107 (D.C.1985) (citing *Shaw v. Railroad Co.*, 101 U.S. (11 Otto) 557, 565, 25 L.Ed. 892 (1879)). The second is that workers' compensation statutes are to be construed liberally in favor of the worker in order for them to achieve their humane purpose. *Ferreira v. Department of Employment Services*, 531 A.2d 651, 655 (D.C.1987); *J.V. Vozzolo, Inc. v. Britton*, 126 U.S.App.D.C. 259, 262, 377 F.2d 144, 147 (1967).

### V.

We would also point out that our analysis does not facilitate double recovery by an employee. The Council expressly wrote

protections against such "windfalls" into the 1979 Act.

Under § 36–335, if an employee believes his injury is the result of the negligence of a third person, the employee may engage in two courses of conduct after he accepts a workers' compensation award from his employer.[10] He may do nothing for six months, in which case his right to recovery against the third person is automatically assigned to his employer. *Id.* at § 36–335(b). The employer may then either institute proceedings for the recovery of damages or may compromise with the third person with or without instituting proceedings. *Id.* at § 36–335(d). In any case, if damages are recovered from a third person, the employer is entitled to retain such amount as covers all its costs in instituting the proceedings and all amounts paid and payable to the employee as workers' compensation. *Id.* at § 36–335(e)(1). The employer is also entitled to twenty percent of the excess of recovery over costs, thus leaving the employee with eighty percent of what his common law tort remedy would have netted. *Id.* at § 36–335(e)(2). Clearly, such a result is not a "windfall" to the employee.

The second course of conduct open to the employee is to commence proceedings against the "third person" within six months after acceptance of the workers' compensation award from the employer. *Id.* at § 36–335(b). If the employee recovers civil damages in the subsequent proceedings, the employer is "required to pay" to the employee *only* for the amount by which the workers' compensation award *exceeds* the civil damage award. *Id.* at § 36–335(f). In other words, if the civil damage award exceeds the workers' compensation award, the employer is not required to tender payment of any workers' compensation benefits. Here again, double recovery is not a possibility. The most an employee receives is the common law tort remedy from a third party who has been adjudicated negligent.

Section 36–335 of the Workers' Compensation Act of 1979 is not an accidental feature of the legislation. It reflects a conscious legislative policy to permit an employee to pursue his full common law remedy when the employee believes that the negligence of a third person caused his injury. Here again, the language of § 36–335 is clear and unambiguous. It speaks in terms of employers and employees. Furthermore, it specifically defines "third persons" as persons other than:

> the employer, or any collective-bargaining agent of the employer's employees and any employee, officer, director, or agent of such employer, insurer, or collective-bargaining agent.

D.C.Code § 36–304(b) (incorporated by reference in § 36–335(a)). Clearly, "general contractor" is not included in this list of excluded "third persons."

Accordingly, the orders in *Featherstone*, *Appling* and *Hobbs* are affirmed and the judgments in *Meiggs* and *Frazier* are reversed.

*So ordered.*

STEADMAN, J., concurs in the result.

10. The options available to the personal representative of a decedent are distinct. D.C.Code § 36–335(c). That provision is not relevant to these appeals, where injury, not death, occurred.