Jolene Bennett RUPE, Appellee,

v.

DURBIN DURCO, INC., et al.,
Appellant.

JASPER CALLOWAY CONSTRUCTION COMPANY, INC., Appellee,

v.

DURBIN DURCO, INC., et al.,
Appellant.

Court of Appeals of Tennessee,
Eastern Section.

April 2, 1976.

Rehearing Denied July 6, 1976.

Wilson, Worley, Gamble & Ward, Kingsport, for appellant.

Hicks, Arnold & Haynes, Johnson City, for appellees.

## OPINION

DAVID T. WALKER, Special Judge.

These product liability actions were premised upon strict liability in tort under Restatement 402(a). They were consolidated for trial before a jury which resolved the issues in favor of the plaintiffs.

The defendant's appeal presents two legal questions of first impression in the State of Tennessee. First, whether a post-trial motion for judgment notwithstanding a verdict, pursuant to Rule 50.02 of the Rules of Tennessee Civil Procedure, should be considered to be a complete substitute for a motion for new trial. Second, whether the Tennessee Workmen's Compensation Act will permit a third party, who has been found liable to a workman for personal injuries, to seek indemnity against the workman's employer who has himself paid compensation benefits to the employee.

We have concluded that the appellate review is restricted to a consideration of the trial judge's action on the defendant's mo-

tion for peremptory instructions which essentially involves consideration of legal issues. We also conclude that there is no right of indemnity under The Workmen's Compensation Act.

On December 29, 1972, Roy Lee Rupe, a truck driver and employee of Jasper Calloway Construction Company, Inc., was instantly killed when a TL–30 Front End Loader shifted from its position on a "lowboy" trailer and crushed the cab of the truck he was driving. The truck belonged to Jasper Calloway Construction Company, Inc. At the time of the accident Rupe was proceeding down a steep gravel road toward the Johnson City-Erwin Highway when the TL–30 shifted. The entire truck-trailer rig was overturned. The TL–30 was still attached to the lowboy by a chain and load binder in the rear and a chain at the front. A second load binder was found some eight to ten feet to the rear of the lowboy with a broken chain link where a hook is normally attached.

The appellant manufactures chain tightening devices known as load binders. The ones found at the accident scene had the following identification markings: "Durbin Durco, Inc., STL Missouri, Pat. DIJ7 and D1–S Durbin, Inc., CAP 12,000, SWL ¼ CAP." The two load binders were purchased by Jasper Calloway Construction Company, Inc. from a local hardware store on December 15, 1972.

The only witness to this accident was Mr. Robert Bennett, an employee of the owner of the TL–30. It was his responsibility to assist in loading the TL–30, but he had no duty to aide Mr. Rupe in securing it. Mr. Bennett was not in a position to testify with any degree of certainty as to the exact procedure employed by Mr. Rupe to secure the TL–30. He did testify that Mr. Rupe had two chains, two binders, and two wooden blocks available, and that the two wooden blocks were used to block the front wheels of the TL–30 to prevent forward movement. Moreover, he testified that he assisted Mr. Rupe in securing the binder to the chain at the rear of the lowboy and the TL–30. However, he was positioned on the passenger's side of the truck and trailer and could not determine whether a binder was used on the front chain. Also, his testimony was conflicting as to how the front chain was employed by Mr. Rupe. Mr. Bennett further testified that he was riding in the cab with Mr. Rupe at the time of the accident, and that he observed some unusual movements of the TL–30 immediately after they started down the gravel road. He said that he endeavored to discuss this matter with Mr. Rupe but that the accident happened before he could.

Mr. Jasper Calloway supported Mr. Bennett's testimony as to the equipment available for securing heavy cargo. He also said that he had observed Mr. Rupe secure heavy equipment on numerous occasions and that it was his invariable habit and custom to use two chains and two binders.

Dr. James H. Steele, Jr., a metallurgical engineer, testified that in his opinion the failure of the load binder was the result of an incomplete weld in the broken link. Furthermore, he said this was present when the manufacturer painted the link because he found red paint in the weld. It was his opinion that the final fracture of the link was a brittle failure as opposed to a ductile tear. He stated that if the binder had been overloaded at the time of failure, there would have been an elongation of fifteen percent and a ductile tear. The link was characterized neither by elongation nor ductile fracture. He further testified that a proper weld is the strongest point in a chain link and other testimony supports this conclusion. In fact, tests have shown that chain links break at places other than the weld in ninety percent of the cases.

This was substantially the evidence introduced by the plaintiffs as to the cause of the accident when the trial judge first overruled the defendant's motion for directed verdict.

The defendant's evidence consisted mainly of the testimony of two experts. One was Mr. Louis Reznek, an attorney and former Chief Engineer, Bureau of Motor Carrier Safety, Interstate Commerce Commission. Mr. Reznek was employed as an

independent consultant to trucking companies and associations on matters concerning the securing of loads and hauling of cargo by trucks. He testified that in his opinion the proper way to secure the TL–30 would have been by four chains and at least four load binders. He said the axles of the TL–30 should have been blocked to eliminate the bouncing effect of the rubber tires, and that the chains and binders should have been attached to the axle of each wheel. He further testified that the gooseneck on the lowboy presented no significant obstacle to forward movement and did not comply with the Tennessee Public Service Commission safety regulations. Those regulations read as follows:

Every motor vehicle carrying cargo, the nature of which is such that the shifting thereof due to rapid deceleration or accident would be likely to result in penetration or crushing of the driver's compartment must, in addition to having the load securely fastened or braced, be provided with header boards of similar devices of sufficient strength to prevent such shifting and penetration. All motor vehicles shall be so constructed or be equipped with adequate cargo fastening devices so that the load will not penetrate the cargo compartment wall when subjected to the maximum braking deceleration of which the vehicle is capable.

On cross-examination Mr. Reznek admitted that at one time he and the Department of Transportation considered the gooseneck a headboard.

The defendant's other expert was Dr. Thomas Manos, a PhD Mechanical Engineer, and an expert in accident reconstruction. He studied the tractor-trailer rig and the TL–30, and was of the opinion Mr. Rupe failed to place pins in the hitch at the rear of the lowboy. This would have allowed the chain to slip, which in turn would permit the loader to shift forward. He assumed the front chain was wrapped around the bucket arms of the TL–30 without the use of the binders, and that this chain simply slipped forward on the gooseneck.

Dr. Manos further testified that since the tractor-trailer rig came to rest in an overturned position on top of the TL–30, there must have been something still securing the TL–30 to the rig when it overturned. He theorized that if two binders were actually used, the overturning process might well have broken any chain or load binders securing the TL–30. If this was the case, the broken binder could have been thrown some distance from the wreckage.

At the close of all the proof, the defendant renewed the motion for directed verdict which the trial judge overruled. The jury returned a verdict of $100,000.00 for plaintiff-appellee, Jolene Bennett Rupe, and $2,000.00 for the plaintiff-appellee, Jasper Calloway Construction Company, Inc. The trial judge sustained a motion for summary judgment and dismissed the third party complaint of Drubin Durco, Inc., for indemnity against the employer, Jasper Calloway Construction Company, Inc.

The appellant did not file a motion for new trial, but chose to seek an appellate review on a post-trial motion for judgment notwithstanding the verdict. The appellant insists that he should not be required to file a motion for new trial because he does not desire a new trial, but seeks a reversal and dismissal of the plaintiffs' original suits. Failing to obtain a dismissal of the original suits, he seeks a reversal of the trial judge's denial of his indemnity claim.

We will first consider the extent of an appellate review required by the motion for judgment notwithstanding a verdict. The appellees contend that a motion for new trial is necessary before an appellate review may be had of the trial court's action in refusing to grant the defendant's motion for directed verdict.

This contention is supported in the case of *Moore v. Standard Life and Accident Ins. Co.*, 504 S.W.2d 373 (Tenn.App.1972), where it was specifically held that: "A motion for new trial is indispensable to review the action of the trial judge in refusing to grant a directed verdict."

The *Moore* case was prior to the effective date of The Tennessee Rules of Civil Proce-

dure. The appellant's motion is permissible under Rule 50.02 which reads as follows:

Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 30 days after the entry of judgment a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict . . . . A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.

. . .

The comments to Rule 50.02 state that:

. . . the power of the Court to grant a directed verdict on post-trial motion, either following a verdict or in event of a mistrial because of disagreement of the jury, has long been recognized in Tennessee. This rule, however, does permit the filing of a post-trial motion for directed verdict without its being incorporated into a motion for a new trial as has been the practice heretofore followed, although the prior practice in this regard is still permitted.

■ This rule is identical to the Federal Rules of Civil Procedure and several federal decisions have treated this motion as a motion for new trial and remanded the case for new trial if the circumstances and justice so demanded. The function of a federal district judge and a Tennessee trial judge are substantially different when faced with a motion for peremptory instruction, and in Tennessee, a more limited appellate review is required. In Higgins and Crownover, Tennessee Procedure in Law Cases, 522, § 1391 (1937), it is said:

The prevailing federal rule is that a trial judge may grant peremptory instructions where he reaches the conclusion that he will have to set aside any verdict which might be rendered in favor of the plaintiff. The rule in Tennessee is that the

judge by so doing enters upon the delicate business of weighing the evidence instead of undertaking to arrive at the conclusion that there is no evidence to sustain the plaintiff's cause of action. The court should not direct a verdict even where the evidence greatly preponderates against the plaintiff, if the latter has submitted material evidence tending to uphold the averments of the declaration. The contrary rule would result in abolishing the statutory prohibition against the granting of more than two new trials for insufficiency of testimony supporting the plaintiff's cause of action. (Citing *Brenizer v. Railroad*, 156 Tenn. 479, 3 S.W.2d 1053 [8 S.W.2d 1099]; *Sills v. Lathan*, 3 Higgins 141.)

In *Lackey v. Metropolitan Life Ins. Co.*, 30 Tenn.App. 390, 206 S.W.2d 806, the Court said:

"There can be no constitutional exercise of the power to direct a verdict in any case in which there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence, upon the issues to be tried." *Tyrus v. Railroad*, 114 Tenn. 579, 594, 86 S.W. 1074, 1077 . . . .

As said so often, this rule requires trial judges and appellate judges, in considering a motion by defendant for a directed verdict, to look to all the evidence, to take as true the evidence for plaintiff, to discard all countervailing evidence, to take the strongest legitimate view of the evidence for plaintiff, to allow all reasonable inferences from it in his favor; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. (cases cited.)

■ The theory upon which a motion for judgment notwithstanding verdict is entertained is that notwithstanding the pronouncement by the jury in favor of a party, the record did not justify or call for the intervention of a jury. No such motion can be entertained on the ground that the evidence does not support the verdict. Such a

motion must be based solely on defects appearing in the record. *Citizens Trust Co. v. Motor Car Co.*, 154 Tenn. 507, 297 S.W. 735.

A motion for new trial in Tennessee provides the trial judge with an opportunity to correct errors and thus prevent unnecessary appeals. It is also in reality a pleading upon which the trial judge reviews the testimony and is in the nature of a new suit in that it is an assault upon a record already made and is a petition to redress wrongs. It should receive the greatest consideration and should not be disposed of hastily. It is the only opportunity provided by law for weighing the preponderance or the sufficiency of the evidence. If the verdict is not sustained by the preponderance of the evidence, it is the duty of the trial judge to grant a new trial. This motion calls for a weighing of the probabilities and for a judgment. The judgment of the trial court is demanded and cannot be avoided. He must either approve or disapprove the verdict, accordingly as he is satisfied or dissatisfied with it in light of the evidence. It is a firmly established rule that no party has a right to a verdict unless he has shown by a preponderance of the evidence that he is entitled to it. The trial judge should always remember that his decision upon this point is final. The appellate courts are not generally concerned with questions of preponderance in a case tried to a jury.

While federal judges are permitted to deal with the problems of insufficiency and preponderance when considering a motion for directed verdict, this important function does not take place in Tennessee until the motion for new trial. The motion for new trial in Tennessee has much merit and validity to determine ultimate justice in a jury trial and the appellate courts will closely scrutinize any procedural rule which abrogates the necessity for a motion for new trial in a jury case.

There is no doubt that the defendant's post-trial motion is sufficient for the purpose of an appellate review, for the right is expressly granted under Rule 50.02. Even prior to Rule 50.02 the appellate courts recognized that as to legal questions, the trial court's actions could be reviewed upon post-trial motions other than for new trial. *Life & Casualty Ins. Co. v. Bradley*, 178 Tenn. 526, 160 S.W.2d 410 (1941); *Fuson v. Cantrell*, 25 Tenn.App. 608, 166 S.W.2d 405 (1942); *Monday v. Reed*, 47 Tenn.App. 656, 341 S.W.2d 755 (1960). Rule 50.02 does not change the substantive law of this state in regard to the power of trial and appellate judges when considering questions pertaining to peremptory instructions. The appellant's position is clearly stated on page one of the reply brief: "Durbin Durco did not seek a new trial, but by its motion sought to have the trial court reconsider its holding as to the sufficiency of the evidence to support the verdict." On page 13 of the brief the following statement appears: "There was insufficient evidence to send the cases to the jury." Similar language also appears on page 23. These matters are not proper considerations by the trial judge on motions for directed verdict. They may only be considered on a motion for new trial by the trial judge whose power is limited by statute to granting two new trials for insufficiency of the evidence to support a jury verdict.

The appellant's post-trial motion for judgment notwithstanding the verdict is generally restricted to two specifications of error. One is that there is no evidence to support the jury's verdict. The other is that the record indicates without doubt that the defendant has established a defense which constitutes a bar to the plaintiff's cause of action.

The appellant's appeal properly raises two basic issues for consideration by this Court. First, is there any material evidence to support the plaintiff's contention that the defective binder was in fact used to bind the TL–30 on the day of this accident? Second, does the defense's evidence establish without any reasonable doubt that the binder in question was put to an abnormal and unintended use resulting in its final failure?

The defendant contends that there is no evidence that the binder found at the rear

of the wreckage was in fact utilized by Mr. Rupe to secure the TL–30. This is a crucial issue because there is no direct testimony on this point, and the plaintiffs' cases would indeed fail if material and determinative evidence to support their contentions cannot be found in the record.

 Any fact may be proven by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The plaintiffs' rely upon the testimony of Mr. Robert Bennett and Mr. Jasper Calloway. Their testimony does constitute material and determinative evidence. Thus, neither the trial judge nor this Court can dismiss these cases on motion for directed verdict. We realize that there is a question as to the weight to be given to the testimony of both of these witnesses. We also realize that there is a question as to the competency of the testimony of Jasper Calloway. However, these matters would have to be dealt with on a motion for new trial. Moreover, the question of the competency of Mr. Calloway's testimony was not raised at the trial level by any post-trial motion and was only brought to the attention of this court by way of argument. We do not find any error in the trial court's failure to grant peremptory instructions on this issue.

 The defendant contends further that if the binder in question was used, the final failure was a result of use beyond its intended capacity. There is no question but that the weight of the TL–30 was 28,400 pounds. Neither is it disputed that the recommended capacity for each binder was 12,000 pounds and the safe working capacity was 3,000 pounds. These warnings were stated by the manufacturer in the terms set out earlier in this opinion and were not understood by some of the experts who testified. Therefore, it could be reasonably inferred that Mr. Rupe did not understand the manufacturer's warning. Disregarding the question of the adequacy of the manufacturer's warning, this Court would be constrained to dismiss these cases except for the testimony of Dr. Steele. He said that the broken link showed no indication of elongation or ductile tear. These things would have indicated use beyond capacity. However, Dr. Steele's testimony was to the effect that the final failure of the binder was the result of the incomplete weld. This originated with the manufacturer and not from use beyond capacity. We find that there was no error in the trial court's failure to grant peremptory instructions. We have reviewed all the defendant's assignments of error and find that they must be overruled. We affirm the action of the trial judge on the defendant's motions for directed verdict.

 The defendant contends further that the trial judge erred in entering a summary judgment dismissing the third party complaint against Jasper Calloway Construction Company, Inc. In that suit, Durbin Durco sought indemnity on the theory that its negligence was passive while the negligence of Jasper Calloway Construction Company, Inc. was active. The active-passive approach to indemnity claims in tort cases was approved in the case of *Cohen v. Noel*, 165 Tenn. 600, 56 S.W.2d 744 (1933). As to the third-party action, the question is as follows: Where a third party is found liable for injuries to a workman, may the third party then seek indemnity from the workman's employer even though the employer himself is liable for the injuries under the Workmen's Compensation law? The federal cases construing the Tennessee Workmen's Compensation laws have held that indemnity claims by a supplier against an employer are barred where the claim is based on indemnity implied in law, although such a claim could be based on an otherwise valid express contract of indemnity. *Dawn v. Essex Conveyors, Inc.*, 498 F.2d 921 (6th Cir. 1974); *McCoy v. Wean United, Inc.*, 67 F.R.D. 495 (E.D.Tenn.1974).

 Workmen's Compensation laws are designed to liberalize the basis for employees' claims against employers for accidental injuries arising out of and in the course of employment. However, such laws restrict the amount of damages by excluding pain and suffering. The Tennessee Contribution Among Tortfeasors Act expressly prohibits contribution under the Workmen's Compensation laws.

The active-passive concept of negligence was resorted to by the courts to avoid rules prohibiting contribution and has proven to be very elusive and difficult to fairly apply. To permit indemnity against an employer would in effect permit a third party tortfeasor to indirectly force an employer to pay for pain and suffering. The employee is not entitled to this under the Workmen's Compensation Act. The problems are further compounded because the employer in this state is subrogated to his employees' rights against a third party tortfeasor to the extent of the compensation paid. There are further complications in this case since the employer, Jasper Calloway Construction Company, Inc., has recovered a $2,000.00 judgment against the third party tortfeasor, Durbin Durco, Inc. Any type of equitable adjustment would appear to be a form of contribution and not indemnity.

The trial judge dismissed the defendant's indemnity claim as a matter of law. Apparently he followed the federal decisions which deny indemnity to a supplier whose actions, in many cases, consist of merely passing on a defective product and could well fall within the passive-active negligence test. Realizing that there are problems in this case, we feel that barring all indemnity claims is consistent with the basic policies of the Workmen's Compensation laws. These problems lend themselves to legislative action rather than judicial interpretation.

The judgment of the trial court is affirmed and the cost of this appeal is taxed to the defendant.

PARROTT, P. J., and GODDARD, J., concur.