Raymond W. BLACK,
Plaintiff-Appellee,

v.

UNITED PARCEL SERVICE,
Defendant-Appellant,

v.

UNITED JANITORIAL SERVICE, INC.,
Third-Party Defendant-Appellee.

No. 85–5322.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 28, 1986.

Decided July 30, 1986.

Ward DeWitt, Jr. (argued), Lawrence C. Maxwell, Trabue, Sturdivant & DeWitt, Nashville, Tenn., for defendant-appellant.

Mark J. Patterson (argued), Manier, White, Herod, Hollabaugh & Smith, P.C., Luther E. Cantrell, Jr. (argued), Nashville, Tenn., for plaintiff-appellee.

Before LIVELY, Chief Judge, and MER-RITT and NELSON, Circuit Judges.

PER CURIAM.

This is a personal injury action brought by Raymond Black, an employee of United Janitorial Service, Inc., against United Parcel Service ("UPS"), the operator of a package shipping terminal that was regularly cleaned by the janitorial service under a contract with UPS. UPS filed a third-party complaint against the janitorial service seeking indemnification under its contract, but the trial court dismissed the third-party complaint prior to trial. The personal injury case was tried to a jury, which returned a $150,000 verdict for Mr. Black. The judgment entered on that verdict must be permitted to stand, in our opinion, and the third-party complaint of UPS against the janitorial service must be reinstated.

**I**

At the time of the accident Mr. Black was one of the janitorial service employees engaged in cleaning the terminal. His job was to blow trash from beneath conveyor belts, using a compressed air hose. The work was performed between "package sorts," at a time when the conveyors were not supposed to be in operation. The UPS "preloading manager" testified, in a deposition read to the jury, that he personally had checked to see that no belts had been left on at the end of the package sort preceding Mr. Black's injury. The manager's testimony also established that UPS maintenance employees would sometimes activate a belt when they wanted to work on it, and would normally announce over a public address system that the belt was going to be started.

Mr. Black was injured while moving between two parallel conveyor belts, one located three feet above the other, neither of which should have been running. As he passed between the two conveyors, Mr. Black's air hose apparently became entangled in the upper conveyor. That conveyor was somehow turned on, and Mr. Black's hands and arms were pulled between the belt and one of its supporting rollers.

The controls by which the conveyor belts were activated were located in a central control tower staffed, during periods when the conveyors were being used, by UPS employees. The tower was ordinarily vacant between package sorts, except when UPS maintenance employees activated the conveyors for testing or repair purposes.

Under the normal procedure for activating the conveyor belts, the operator would press a button that had to be held down for fifteen seconds before the system would start. A loud warning buzzer automatically sounded as long as the button was being pressed. The buzzer warning system could be bypassed through use of a key that the UPS maintenance supervisor kept in a locked cabinet in his office.

Although the maintenance supervisor testified that he did not believe the bypass key had ever been used, the belt on which Mr. Black was injured started to run, as the jury could have found, without the warning buzzer having sounded. A subsequent check of the electrical control circuits disclosed no indication of a malfunction in the warning system. It is undisputed that no announcement was made over the public address system before the belt started running.

Mr. Black sued UPS in a Tennessee state court, and the action was removed to the federal district court on diversity of citizenship grounds. UPS filed an answer setting up defenses of contributory negligence and assumption of the risk, and it impleaded the janitorial service as a third-party defendant. The third-party complaint alleged that under its contract with UPS the janitorial service assumed "entire responsibility and liability for any and all damage or injury ... to an employee of [the janitorial service] ... provided that such employee is engaged in the performance of work under this contract." The contract went on to provide, as UPS alleged, that the janitorial service would indemnify UPS from all liability for such damage or injury, however caused, including damage or injury caused by UPS's own negligence.

The janitorial service perfected a fourth-party action against Maryland Casualty Company, and then moved for dismissal of the third-party claim filed against it by UPS. The trial court granted the motion and dismissed the third-party claim, relying on this court's decision in *Tennessee River Pulp & Paper Co. v. Eichleay Corp.*, 708 F.2d 1055 (6th Cir.1983), for the proposition that the exclusive remedy provided by the Tennessee Workers' Compensation Act barred any contractual indemnity action against the injured party's employer. Dismissal of the third-party claim mooted a motion that Maryland Casualty had filed seeking dismissal of the fourth-party claim against it.

When his action against UPS went to trial, Mr. Black attempted to show that UPS had been negligent in at least three respects: in permitting an unscheduled start-up of its conveyor without prior warning, in failing properly to follow its own procedures for preventing any unauthorized start-up, and in failing to provide appropriate guards in the vicinity of the rollers. The trial court denied a motion by UPS for a directed verdict and sent the case to the jury under a charge which omitted an instruction requested by UPS to the effect that because a property owner's duty to warn of latent dangers arises out of the owner's "superior knowledge" of the dangerous condition, there can be no liability for injuries "sustained from dangers that are obvious, reasonably apparent or as well known to the worker as the owner."

The jury returned a verdict for the plaintiff, and UPS perfected a timely appeal from the judgment.

**II**

UPS contends on appeal that it was entitled to a directed verdict, that the "superior knowledge" charge it requested should have been given to the jury, and that the trial court erred in permitting the plaintiff to introduce the deposition testimony of the preloading manager. We find none of these contentions persuasive.

■ UPS seems to suggest that the untimely start-up of the conveyor belt was an act of God for which no human agency could be held responsible. That suggestion will not wash, given the evidence tending to show that there was no malfunction in the equipment and that absent a malfunction (and absent the sounding of the usual warning buzzer) the conveyor belt could only have been started by a key that was in the exclusive control of UPS. If UPS unexpectedly started the conveyor belt without any advance warning to janitorial service employees, the jury could obviously have found UPS negligent on that score.

■ As far as the court's charge to the jury is concerned, we find the charge itself unexceptionable. The jury was told, among other things, that the plaintiff had the burden to prove every essential element of his claim; that UPS denied it was guilty of any negligence which was the proximate cause of the plaintiff's injuries; that negligence is the failure to exercise ordinary care, including the doing of some act that a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do under circumstances similar to those shown by the evidence; that the owner or occupant of property must use reasonable care

to provide a safe place to work for the employee of an independent contractor; and that the property owner was required to warn or protect such employees against dangers of which the owner had knowledge. Appropriate instructions were also given on contributory negligence and assumption of risk.

The question presented "is whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried." *Teal v. E.I. DuPont de Nemours*, 728 F.2d 799, 802 (6th Cir.1984). We believe the jury was given adequate guidance here. Under Tennessee law the duty of care owed by a landowner is simply a duty "of reasonable care under all of the attendant circumstances," *Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn.1984), and that is precisely what this jury was told. The jury had been invited to decide, among other things, whether UPS negligently started the conveyor, and the duty that UPS was charged with having violated in that respect was not based on "superior knowledge" of a latent danger. UPS had a duty to refrain from taking unexpected action by which, as it should have known, Mr. Black would have been subjected to an unreasonable risk of injury, and without careful qualification a "superior knowledge" charge could have been a red herring under the circumstances of this case. It might not have been prejudicial error to give the charge, but neither was it prejudicial error to withhold it.

As far as the presentation of testimony by way of deposition is concerned, the trial court concluded that the preloading manager was a "managing agent" within the meaning of Rule 32(a)(2) of the Federal Rules of Civil Procedure, which permits the deposition testimony of such agents to be used at trial for any purpose. The court's conclusion seems reasonable, and, in any event, there has been no showing that the reading of the deposition prejudiced UPS in any way. The witness was physically present in the courtroom during the trial, and UPS could have put him on the stand to correct or supplement his deposition testimony had there been any reason to do so.

**III**

■ Turning to the dismissal of the third-party complaint filed by UPS against the injured man's employer, it was long the understanding of this court that although the "exclusive remedy" provision of the Tennessee Workers' Compensation Act bars third-party indemnity actions against an employer where such actions are based on an active-passive negligence theory, the Tennessee courts would not treat the exclusive remedy provision as a bar to third-party actions based on an express agreement by the employer to indemnify the third-party. The pertinent cases are cited at *Tennessee River Pulp & Paper Co. v. Eichleay Corp.*, 708 F.2d 1055, 1056 (6th Cir. 1983). Based on a dictum in *Rupe v. Durbin Durco, Inc.*, 557 S.W.2d 742 (Tenn.App. 1976), however, we concluded in *Tennessee River* that the Tennessee courts, if required to decide the issue, would hold the exclusive remedy provision a bar even where the indemnity claim was based on an express contractual undertaking by the employer to indemnify the third-party. No Tennessee court having held otherwise when the trial court addressed the janitorial service's motion to dismiss UPS's third-party indemnity claim in the case at bar, it is not surprising that the third-party claim should have been dismissed.

Since then, however, there has been a more authoritative pronouncement on the Tennessee law than that contained in our *Tennessee River* decision. In *Easter v. Exxon Co., USA*, 699 S.W.2d 168 (Tenn. App.1985), a Tennessee appellate court squarely held that Tennessee law does not bar a third-party indemnity action against the employer where the action is based on a contract of indemnity.

■ The case at bar being a diversity action, we must, of course, apply Tennessee law; and we must apply what we now perceive the Tennessee law to have been, rather than what we would have perceived the Tennessee law to be at the time the trial court acted. *Awrey v. Progressive*

*Casualty Insurance Co.,* 728 F.2d 352, 354 (6th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985). In the light of *Easter,* we now believe the Tennessee law to have been what we thought it was before the dictum in *Rupe* persuaded us otherwise. Accordingly, UPS must be permitted to pursue its third-party action against United Janitorial Service, Inc.

The judgment entered on the jury's verdict for Mr. Black is **AFFIRMED,** and the cause is **REMANDED** for further proceedings with respect to the third and fourth party complaints.