**MYCO, INC., Appellant,**

v.

**SUPER CONCRETE CO., INC., et al., Appellees.**

No. 88–1133.

District of Columbia Court of Appeals.

Argued June 21, 1989.
Decided Oct. 13, 1989.

Paul H. Ethridge, Rockville, Md., for appellant.

Michael F. Flynn, Jr., Rockville, Md., for appellees.

Before ROGERS, Chief Judge, TERRY, Associate Judge, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

In this appeal we are called upon to determine the effect of the District of Columbia's Workers' Compensation Act[1] on the right of a third party to indemnity from the employer of an injured worker seeking recovery in tort from that third party. Ap-

pellant Myco, Inc., appeals from an order of the Superior Court dismissing its amended third-party complaint for indemnity against appellee, Super Concrete Company. Appellant argues that the trial court erred in determining that Myco failed to allege a cognizable cause of action. We disagree and affirm.

I

Reviewing the facts in the light most favorable to appellant,[2] the record shows that in October, 1985, Super Concrete Co. contracted with appellant Myco, Inc., an electrical service and supply company incorporated in Maryland and doing business in the District, for Myco to convert a power washer on Super Concrete's business premises from a gasoline driven pump to an electric motor drive. The washer was located outdoors and used to wash trucks utilized in transporting concrete. Myco completed the conversion, and the two companies had no further business contacts.

On June 10, 1987, Thomas Fugitt—employed by Super Concrete as a truck driver—was using the washer to wash cement off the axle of his cement truck. When he picked up the metal spray wand, he was electrocuted. Fugitt's wife filed a workers' compensation claim for death benefits with the District of Columbia Department of Employment Services on June 19, 1987. As a result, Super Concrete's insurer, the PMA Group, has been paying weekly death benefits to Fugitt's estate.[3]

Fugitt's wife later filed a wrongful death action against Myco. The complaint alleged that Myco had been negligent in installing a non-watertight starter box on the power washer and in installing only a single clamp attaching the power cord to that starter box, thereby allowing water to seep into it. On April 7, 1988, Myco filed a third-party complaint against Super Concrete. Myco alleged that Super Concrete, in contravention of Myco's instructions, "altered, modified, changed or otherwise tam-

1. D.C.Law 3-77, 27 D.C.Reg. 2503 (1980) (codified at D.C.Code §§ 36-301 to 36-345 (1989 Repl.)).

2. See Leichtman v. Koons, 527 A.2d 745, 746 (D.C.1987); Taylor v. Eureka Inv. Corp., 482 A.2d 354, 357 (D.C.1984).

3. See D.C.Code § 36-309 (1989 Repl.).

pered with the power washer ... said alteration including" replacing the original five-foot power cord with one thirty feet long, as well as altering the "plug, strain relief clamp and other equipment" installed by Myco. The third-party complaint sought contribution or indemnification from Super Concrete "for all sums of money which may be adjudged against ... Myco ... plus costs and attorney's fees." [4]

On May 23, 1988, Super Concrete filed a motion to dismiss the third-party complaint.[5] Super Concrete argued that, because of a provision of the D.C. Workers' Compensation Act [6] restricting an employer's liability to workers' compensation payments when an employee has been killed or injured on the job, it could not be held liable to Myco for either contribution or indemnity.

On July 15, 1988, Myco filed an amended third-party complaint in response to an amended complaint filed by Fugitt.[7] Myco conceded that it is barred from obtaining contribution from Super Concrete. However, Myco continued to assert that it could maintain an action for indemnification from Super Concrete.

Following oral argument by counsel for Myco and Super Concrete on July 25, 1988, the trial court granted Super Concrete's motion to dismiss the amended third-party complaint against it. The trial judge, in granting the motion, treated it as a motion for summary judgment. On July 28, 1988, the court ordered that final judgment be entered in favor of Super Concrete on Myco's amended third-party complaint.[8] This appeal followed.

## II

In reviewing the propriety of an order granting a motion for summary judgment, we are guided by the principle that the entry of summary judgment is proper if "there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Wolf v. Regardie*, 553 A.2d 1213, 1216 (D.C.1989); *see Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); Super.Ct.Civ.R. 56(c). As the parties have failed to allege the existence of a disputed material fact, we focus solely on the latter portion of this principle, that is, whether there exists a viable legal theory which, if proved, would entitle appellant to judgment in the trial court. *See Williams v. Gerstenfeld*, 514 A.2d 1172, 1177 (D.C.1986). We must therefore determine whether a third party, in an action against it by or on behalf of an injured or deceased employee, is entitled to indemnity from the employer whose negligence is alleged to have contributed to the employee's injury. A leading authority has noted that the issue is "[p]erhaps the most evenly balanced controversy in all of [workers'] compensation law...." 2B A. LARSON, WORKMEN'S COMPENSATION LAW § 76.11, at 14–644 (1989); *see* Comment, *The Effect of Workers' Compensation Laws on the Right of a Third Party Liable to an Injured Employee to Recover Contribution or Indemnity from the Employer*, 9 SETON HALL L.REV. 238, 297–300 (1978) (hereinafter *Effect of Workers' Compensation Laws*). Each of the parties to this dispute makes a strong argument. We conclude that the objectives underlying the Act, as well as the great weight of case law, oblige us to answer the question in the negative on the indemnity issue.

## A.

The triadic relationship between an employer, an injured or deceased employee,

---

4. An independent contractor, J.C.L. Service First, Inc., the company that allegedly made changes to the power washer for Super Concrete, was also added as a third-party defendant. Fugitt later amended the complaint to include J.C.L. as a defendant in June, 1988, and Myco has since filed a cross-complaint against J.C.L. J.C.L. is not a party to this appeal, however.

5. Filed with the motion to dismiss were copies of (1) a notice of claim of death benefits filed with the Department of Employment Services,

(2) an affidavit by Super Concrete's insurer attesting to the payment of benefits, and (3) a memorandum of payment of workers' compensation.

6. D.C.Code § 36–304(a) (1989 Repl.).

7. See *supra* note 4.

8. *See* Super.Ct.Civ.R. 54(b).

and a third party is governed by the District of Columbia Workers' Compensation Act, D.C.Code §§ 36–301 *et seq.* (the Act), which establishes a no-fault means of recovery for accidental injuries occurring in the course of employment. *Grillo v. National Bank of Washington,* 540 A.2d 743, 748 (D.C.1988) (citing COMMITTEE ON PUBLIC SERVICES AND CONSUMER AFFAIRS, REPORT ON BILL 3–106, LAW 3–77: THE DISTRICT OF COLUMBIA WORKERS' COMPENSATION ACT OF 1979 Part II, at 2 (Jan. 16, 1980) (hereinafter COMMITTEE REPORT).[9] To provide a "reasonably quick and efficient manner to compensate employees for disabilities resulting from employment-bred injuries," *Ferreira v. District of Columbia Department of Employment Services,* 531 A.2d 651, 654 (D.C.1987), the Act operates on a *"quid pro quo"* basis. *See Grillo, supra,* 540 A.2d at 748; *cf. WMATA v. Johnson,* 467 U.S. 925, 931–32, 104 S.Ct. 2827, 2831, 81 L.Ed.2d 768 (1984) (interpreting LHWCA). Toward this end, § 36–304(a) of the Act provides:

> The liability of an employer prescribed in Section 36–303 *shall be exclusive and in place of all liability* of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, *and anyone otherwise entitled to recover damages from such employer at law on account of such injury or death.*[10]

(Emphasis added.)

This exclusivity provision creates an equation roughly balancing the sacrifices of and benefits to both employer and employee. *See Grillo, supra,* 540 A.2d at 748; 2A A. Larson, *supra,* § 65.11, at 12–8

to 12–9. The employee gains the benefit of receiving faster and virtually guaranteed compensation for accidental job-related injury, even in cases where the accident was the consequence of the employee's own negligence, *see Meiggs v. Associated Builders, Inc.,* 545 A.2d 631, 637 (D.C.1988), while in return relinquishing any tort claim against the employer. The employer assumes a new liability which fixes automatically without any finding of fault on its part, but is relieved of its previously unlimited common law tort liability. *See Grillo, supra,* 540 A.2d at 748 (citing COMMITTEE REPORT, *supra,* Part I, at 6); *cf. Ryan Stevedoring Co. v. Pan–Atlantic Steamship Corp.,* 350 U.S. 124, 129, 76 S.Ct. 232, 235, 100 L.Ed. 133 (1956); *Billy v. Consolidated Machine Tool Corp.,* 51 N.Y.2d 152, 159, 412 N.E.2d 934, 939, 432 N.Y.S.2d 879, 883 (1980).

Though workers' compensation statutes typically govern only the employee-employer relationship, in many instances the injury results from the exclusive or concurrent fault of a third party. Because an employee is prevented from seeking a tort award from the employer, *see* D.C.CODE § 36–304(a), and because workers' compensation benefits often fall far short of those potential awards,[11] *see Castro v. State,* 114 Cal.App.3d 503, 515, 170 Cal.Rptr. 734, 741 (4th Dist.1981), suing the third party becomes an attractive alternative to make up the difference.

In such cases, nothing precludes the employee from seeking injury-related damages from that third-party tortfeasor. *See*

---

**9.** Prior to the enactment of this statute, the District's workers' compensation system was governed by the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.* (1976) (hereinafter LHWCA). *See O'Connell v. Maryland Steel Erectors, Inc.,* 495 A.2d 1134, 1140–41 (D.C.1985); D.C.Code §§ 36–501, 36–502 (1973). The LHWCA served as a model for the District Act, and many portions of the two are identical. *See Grillo, supra,* 540 A.2d at 749 n. 15.

**10.** This provision has virtually identical analogous in many states, *see, e.g.,* N.Y. WORK. COMP. LAW § 11 (McKinney 1968 & Supp.1989); 77 PA.STAT.ANN. § 481(a) (Purdon Supp.1989); *see*

*generally* U.S. CHAMBER OF COMMERCE, ANALYSIS OF WORKERS' COMPENSATION LAWS (1982).

**11.** For comparisons of compensation awards with the amount of total damages, *see Dodge v. Mitsui Shintaku Ginko K.K., Tokyo,* 528 F.2d 669, 670 (9th Cir.1975) (compensation: $1,454.92; damages: $9,000), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *Newport Airpark, Inc. v. United States,* 419 F.2d 342, 344 (1st Cir.1969) (compensation: $8,600; settlement: $50,000); *Stark v. Posh Constr. Co.,* 192 Pa.Super. 409, 411, 413, 162 A.2d 9, 10–11 (1960) (compensation maximum: $20,000; judgment: $111,123.42).

2A A. LARSON, *supra*, § 71.10, at 14–2. In regard to a claim by an employee against a third party, the Act is neutral, "leaving [the third party] with [its] common-law liability to the injured employee...." *Schweizer v. Elox Division of Colt Industries*, 70 N.J. 280, 287–88, 359 A.2d 857, 861 (1976); *see DiNicola v. George Hyman Construction Co.*, 407 A.2d 670, 673 (D.C. 1979) (interpreting LHWCA). However, when the third party, to protect against an adverse monetary judgment, seeks indemnity from the employer for having contributed to or caused the injury for which the employee seeks damages, that cause of action runs head-on into the exclusivity provision of the Act.

To illustrate, in this case the estate of the injured employee sued Myco, which in turn joined Super Concrete as a third-party defendant seeking indemnification (or contribution). Myco alleged that Super Concrete was negligent in maintaining and modifying the washer. Although Myco later conceded that the exclusivity provision of the workers' compensation statute bars an action for contribution,[12] it continues to assert its "right" to indemnification. Super Concrete, on the other hand, contends that the exclusivity provision of the Act precludes an action for indemnity. We turn, then, to examine this contention.

## B.

Indemnity is a common law remedy which shifts a monetary loss from one compelled to pay it to another whom equity dictates should bear it instead. W. PROSSER, THE LAW OF TORTS § 51 (4th ed. 1971); *see McFall v. Compagnie Maritime Belge, S.A.*, 304 N.Y. 314, 328, 107 N.E.2d 463, 471 (1952). A right to indemnity may either be express, arising out of a written agreement, or implied, arising out of a relationship between the parties.

In addition to barring contribution from an employer, the exclusivity provisions of state workers' compensation statutes are generally held to preclude indemnity in all but a few specified instances. This is due, in part, to a recognition that there is little appreciable difference between requiring an employer to reimburse a third party's payment to a worker in separate litigation and requiring the employer to pay the worker that amount in damages directly, an action explicitly precluded by the exclusivity provisions of most workers' compensation laws.

### 1. *Express Indemnity*

It is well settled in most jurisdictions that when the third party's claim against the employer is for indemnity pursuant to an express contractual provision, the exclusivity provisions of workers' compensation laws do not bar the indemnification. *See, e.g., Superior Companies v. Kaiser Cement Corp.*, 152 Ariz. 575, 733 P.2d 1158, (Ct.App.1987); *Republic Steel Corp. v. Glaros*, 12 Ohio App.2d 29, 31, 230 N.E.2d 667, 669, 41 Ohio Op.2d 86, 87–88 (1967). This is because the duty involved is one voluntarily accepted by the employer and existing separate and apart from either of the parties' relationships with the injured employee. Consequently, the duty is not one which arises "on account of" the employee's injury and thus is not covered by the statute. As there exists no such contractual provision in the case before us, we need not further discuss the issue.

### 2. *Implied Indemnity*

Implied indemnity is essentially an equitable remedy that "arise[s] without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory." W. PROSSER, D. DOBBS, R. KEETON & D. OWEN, PROSSER & KEETON ON THE LAW OF TORTS § 51, at 341 (5th ed. 1984). Under this theory, indemnification may rest essentially on one of two con-

---

**12.** This concession was justified, since most jurisdictions hold that "the employer whose concurring negligence contributed to the employee's injury cannot be sued or joined by the third party as a joint tortfeasor" pursuant to the exclusive-remedy provision of the applicable workers' compensation statute. 2B A. LARSON,

*supra*, § 76.20, at 14–654 & n. 24 (listing jurisdictions); *see* Annotation, *Modern Status of Effect of State Workmen's Compensation Act on Right of Third–Person Tortfeasor to Contribution or Indemnity from Employer of Injured or Killed Workman*, 100 A.L.R.3d 350, 356–65 (1986 & 1988 Supp.).

cepts. The first, the "active/passive" theory, permits indemnity when the relationship between the employer and third party is that of joint tortfeasors, and is "based squarely upon the theory that an 'actively' negligent tortfeasor has an implied obligation to indemnify a 'passively' negligent tortfeasor." *Effect of Workers' Compensation Laws, supra,* 9 SETON HALL L.REV. at 256.[13] This is, however, a minority position. *See id.* at 256–60. The second—and more widely accepted—is based on the well-established theory that if one breaches a duty owed to another and the breach causes injury, the former should compensate the latter. *See* PROSSER & KEETON ON THE LAW OF TORTS, *supra,* § 53, at 356–59. This is often referred to as the "independent duty" theory.

### a. The active/passive theory of indemnity

■ Under the "active/passive" theory, also called the "primary/secondary" theory, a few courts have allowed indemnification when the third party's conduct "passively" contributes to an injury while the employer's acts "actively" cause the injury. *See, e.g., American District Telegraph Co. v. Kittleson,* 179 F.2d 946, 952–53 (8th Cir. 1950); *Coates v. Potomac Electric Power Co.,* 96 F.Supp. 1019, 1021 (D.D.C.1951); *Jones v. McDougal–Hartmann Co.,* 115 Ill.App.2d 403, 406, 253 N.E.2d 581, 583 (1969). Passive negligence is characterized by nonfeasance, such as the failure to perform some duty imposed by law. *See Adler's Quality Bakery Inc. v. Gaseteria, Inc.,* 32 N.J. 55, 79–80, 159 A.2d 97, 110 (1960). Active negligence, on the other hand, is misfeasance, such as an affirmative negligent act. *See Rossmoor Sanitation, Inc. v. Pylon, Inc.,* 13 Cal.3d 622, 629, 532 P.2d 97, 101, 119 Cal.Rptr. 449, 453 (1975); *State Farm Fire & Casualty Co. v. Home Insurance Co.,* 88 Wis.2d 124, 130–31, 276 N.W.2d 349, 352 (Wis.Ct.App.1979). Thus,

> indemnification of a concurrently negligent tortfeasor is said to be based upon a

disparity of duties of care owed by the tortfeasors to the injured. party, the doctrine of last clear chance or discovered peril, a disparity of gravity of the fault of the tortfeasors, or a combination of these.

*United Air Lines, Inc. v. Wiener,* 335 F.2d 379, 399 (9th Cir.) (footnotes omitted), *cert. denied,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964).

Appellant argues that both the trial judge and this court are bound to accept as valid the theory of implied indemnity under the ruling in *Coates, supra.* In *Coates,* the United States District Court for the District of Columbia recognized a third party's right to indemnity under the federal Longshoremen's Act, the predecessor to the District Act,[14] where "the negligence of the secondary wrongdoer has been a failure to foresee and take precautions to prevent injury from the act of the primary wrongdoer." *Coates,* 96 F.Supp. at 1021.

However, the holding in *Coates*—a U.S. district court decision, not an appellate decision—is not binding on us. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). In any event, we do not accept this theory of indemnification, and it is contrary to the weight of authority.

■ The basis for recovery under the "active/passive" theory is, in reality, the joint liability of the employer and third party—albeit in differing degrees. *See Arcell v. Ashland Chemical Co.,* 152 N.J.Super. 471, 489, 378 A.2d 53, 62 (Law Div. 1977); *Slattery v. Marra Brothers,* 186 F.2d 134, 139 (2d Cir.) (L. Hand, C.J.), *cert. denied,* 341 U.S. 915, 71 S.Ct. 736, 95 L.Ed. 1351 (1951). However, under the exclusivity provision of the Act the employer cannot be liable in tort to the employee for the injury, *see* D.C.Code § 36–304(a), and therefore cannot be jointly liable with a third party, *see Santisteven v. Dow Chemical Co.,* 506 F.2d 1216, 1219 (9th Cir.1974).

To conclude otherwise would be to sanction a form of indemnity that is, in actuality, solely "an extreme form of contribu-

---

**13.** At times, a contractual relationship between the parties exists. *Id.* at 258.

**14.** *See supra* note 9.

tion." *Slattery, supra,* 186 F.2d at 138. Yet, joint tortfeasor contribution as a form of recovery is barred by the exclusivity portion of the Act. *See* 2B A. LARSON, *supra,* § 76.20, at 14–654 & n. 24.[15]

> So far as we can see therefore there is no body of sure authority for saying that differences in the degrees of fault between two tortfeasors will without more strip one of them, if he is an employer, of the protection of the compensation act; and we are at a loss to see any tenable principle which can support such a result.

*Slattery, supra,* 186 F.2d at 139. Consequently, Myco's right to indemnity must be found—if at all—in the second concept of implied indemnity: the "independent duty" theory.

### b. *The independent duty theory of indemnity*

■ Under this theory, the third party is entitled to indemnity from the employer if the two "stand in a special legal relationship that carries with it the obligation ... to indemnify the third party" and this right of indemnity "may be enforced without offending the exclusive-remedy clause." Larson, *Third–Party Action Over Against Workers' Compensation Employer,* 1982 DUKE L.J. 483, 505–06; "[I]t is the fact situation in its entirety, consensual and non-consensual elements both included, which gives rise to the obligation...." Leflar, *Contribution and Indemnity Between Tortfeasors,* 81 U.PA.L.REV. 130, 147 (1932).

■ In order to establish the right to this particular type of implied indemnity, the obligation must arise out of a specific duty of defined nature—separate from the injury to the employee—owed to the third party by the employer. *See Hysell v. Iowa Public Service Co.,* 534 F.2d 775, 782 (8th Cir.1976) (applying Iowa law); *Ramos v. Browning Ferris Industries of South Jersey, Inc.,* 103 N.J. 177, 188–89, 510 A.2d 1152, 1158 (1986). The legal basis for this exception is fairly straightforward. The immunity from liability conferred on employers by the Act and other similar provi-

sions is only against actions for damages "on account" of the employee's injury or death. *See* D.C.Code § 36–304(a). Consequently, a suit in which "a third party's action for indemnity is not exactly for 'damages' but for reimbursement, and ... is not 'on account of' the employee's injury, but on account of breach of an independent duty owed by the employer to the third party" avoids the exclusivity provision. 2B A. Larson, *supra,* § 76.41, at 14–733 to –734; *cf. Holden v. Placid Oil Co.,* 473 F.Supp. 1097, 1100–01 (E.D.La.1979) (LHWCA). Thus, when the indemnity is based on a special legal relationship existing separate and apart from any liability which the employer might have had to the injured employee, indemnity is allowed. *See Bonus–Bilt, Inc. v. United Grocers, Ltd.,* 136 Cal.App.3d 429, 437, 186 Cal.Rptr. 357, 361 (1st Dist.1982).

Examples of the special legal relationships that have been held to support a third-party claim for indemnification include that of bailor and bailee and lessor and lessee, *see* 2B A. Larson, *supra,* § 76.51, at 14–763 to –767; *see, e.g., Baugh v. Rogers,* 24 Cal.2d 200, 214–15, 148 P.2d 633, 641–42 (1944); principal and agent, *see, e.g., Hagen v. Koerner,* 64 N.J.Super. 580, 586–87, 166 A.2d 784, 787 (App.Div. 1960).

■ Myco contends that Super Concrete owed it a legal duty to use and maintain the power washer so as to "prevent injury and protect Myco from any future legal action." Myco asserted below that when it converted the washer it "properly performed the necessary work in accordance with the then-existing practice in the industry," and that it instructed Super Concrete "in the safety precautions necessary in the proper maintenance of the equipment, specifically in regard to any alteration or replacement of the electric power cord." Thus, Myco argues, Super Concrete had a duty to follow those instructions, and its failure to do so was a breach of a legal obligation giving rise to a right to indemnification.

---

**15.** *See supra* p. 297 & note 12.

Put another way, Myco's argument is that when an employer has a previously-purchased product serviced or modified, there is an implied contract with the seller to use the product in such a way as not to bring liability upon the service provider. We have not previously considered the question. However, courts have almost unanimously rejected the analogous argument that when a buyer purchases a product he impliedly contracts with the manufacturer to use the product so as to avoid the imposition of liability on the manufacturer. *See, e.g., Drake v. Raymark Industries, Inc.*, 772 F.2d 1007, 1010 (1st Cir. 1985), *cert. denied*, 476 U.S. 1126, 106 S.Ct. 1994, 90 L.Ed.2d 675 (1986); *Decker v. Black & Decker Manufacturing Co.*, 389 Mass. 35, 39, 449 N.E.2d 641, 644 (1983); *Williams v. Ashland Chemical Co.*, 52 Ohio App.2d 81, 90–91, 368 N.E.2d 304, 311, 6 Ohio Op.3d 56, 61 (1976); *Olch v. Pacific Press & Shear Co.*, 19 Wash.App. 89, 93–94, 573 P.2d 1355, 1357 (1978). We find the two arguments sufficiently comparable so as to conclude that the holding in these latter cases support the rejection of appellant's argument.

We agree with the authorities that conclude the imposition of such a duty would stand "indemnity on its head." *Santisteven, supra*, 506 F.2d at 1219. The employer's duty of proper use and care of the washer extends solely to its employees; Super Concrete's liability for a breach of that duty was satisfied, pursuant to the Act, by payment to Fugitt's estate of the compensation award. *See* D.C.Code § 36–304(a); *Therrien v. Safeguard Manufacturing Co.*, 35 Conn.Supp. 268, 270, 408 A.2d 273, 275 (1979), *aff'd*, 180 Conn. 91, 429 A.2d 808 (1980).

That liability being extinguished, we would not conclude that the employer, Super Concrete, had an independent duty to Myco to protect it from liability. Absent a much closer relationship than that which exists between the parties here,[16] *cf. Roy v. Star Chopper, Inc.*, 442 F.Supp. 1010 (D.R. I.1977) (relationship between manufacturer

and purchaser/employer supporting indemnity may be more in nature of co-manufacturers), *aff'd*, 584 F.2d 1124 (1st Cir.1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979), any other determination would "be stretching the concept of contract out of all relation to reality," 2B A. LARSON, *supra*, § 76.84, at 14–871.

We thus conclude that Super Concrete owes no independent duty to Myco which would serve to entitle the latter to indemnification. Rather, Super Concrete owed Myco

> only the general duty that every member of society owes to every other member—the duty not to harm him through tortious acts. Such a a general duty does not support a right to indemnity in a case where the would-be indemnitor is an "employer" covered by the Work[ers'] Compensation law.

*Western Casualty & Surety Co. v. Grolier, Inc.*, 501 F.2d 434, 438 (8th Cir.1974) (interpreting Iowa statute similar to exclusivity provision of D.C.Code); *accord, Hysell, supra*, 534 F.2d at 782.

Consequently, because there exists no legal basis for Myco's complaint, no reasonable juror, acting reasonably, could find for Myco as a matter of law. The trial court therefore properly granted summary judgment for Super Concrete. *See Nader, supra*, 408 A.2d at 42.

### III

Each of the parties here—the plaintiff (the employee's estate), the third-party defendant (Super Concrete) and the defendant/third-party plaintiff (Myco)—has a thought provoking, conflicting, position with regard to indemnity. The employer has accepted unconditional liability for any work related accident in exchange for a limited disbursement to the employee. Because the employer is required to compensate the employee even in cases where the latter's injury is not attributable to its negligence, it could be inequitable to increase

---

**16.** A different question may be presented, possibly, after the evidence is adduced, if this case goes to trial.

the monetary award in cases where the employer was at fault. Allowing unlimited indemnity would burden the employer with a monetary liability greatly in excess of that which the legislature has deemed acceptable.

The employee, on the other hand, has relinquished the right to large damage awards against an employer in return for certain recovery regardless of fault, *see* D.C.Code § 36–304(b), while retaining the right to pursue recovery from the third party. Insulating the third party from suit would deprive the employee of that right.

Finally, as for the third party, since the Act does nothing to abrogate the rights of the employer or employee against it, its rights against the employer and employee might also deserve consideration. A broad prohibition against indemnity has harsh consequences for the third party: it can be saddled with a large monetary judgment simply because the other party which may be primarily negligent happens to be the plaintiff's employer. Restricting indemnity thus makes the third party bear the monetary burden of a workers' compensation system without receiving any benefits from that system sufficient to balance the weight of the burden. *See* 2B A. LARSON, *supra*, § 76.11, at 14–645; *see also Sunspan Engineering & Construction Co. v. Spring–Lock Scaffolding Co.*, 310 So.2d 4, 7–8 (Fla.1975).

Despite equities in favor of each of the parties in this case, the weight that tips the scales against Myco is the exclusivity provision of the Act, which we conclude compels the decision we reach. While we recognize it is conceivable that the end result of this litigation for Myco could turn out to be harsh,[17] any other solution would require a significant change in the statute as it presently exists.

In other words, we consider that the legislation compels us to conclude that the exclusivity provision requires us to rule against the allowance of indemnity here. A conclusion that a right of implied indemnity exists here, "in the absence of an independent duty, would subvert the [present] legislative intent to restrict the employer's liability to the Workers' Compensation Act." *Ramos, supra*, 103 N.J. at 188–89, 510 A.2d at 1158; *see Rupe v. Durbin Durco, Inc.*, 557 S.W.2d 742, 750 (Tenn.Ct.App.1976), *overruled in part on other grounds by Crosslin v. Alsup*, 594 S.W.2d 379 (Tenn.1980). Allowance of such a recovery would allow the employee to accomplish indirectly what cannot be done directly and thereby evade the legislation. It tends to impair "the balance of the workers compensation system by subjecting the employer to unlimited liability."[18]

Given this legislative intent, the nature and extent of the statutory change necessary to effectuate a workable restructuring and reform of the present system, and the important public policy considerations behind the Act, any expansion in the availability of indemnification in cases such as this is not for us to fashion, but must be left to the legislative branch. *District of Columbia Department of Corrections v. Teamsters Union Local No. 246*, 554 A.2d 319, 326 (D.C.1989) ("If this result seems unsatisfying, then it is up to the Council of the District of Columbia to amend the statute.") In the meantime, the courts are bound by the legislation.

*Affirmed.*

---

**17.** We note, however, that the chance of an unjust outcome for Myco may be minimal. If during trial the evidence substantiates Myco's claim that it was not negligent, then the jury should enter judgment in its favor. *See Hairston v. United States*, 497 A.2d 1097, 1103 (D.C. 1985) (jury assumed to act properly and to follow judge's instructions); *Heinrich v. Peabody*

*International Corp.*, 117 Ill.2d 162, 168–69, 510 N.E.2d 889, 892, 109 Ill.Dec. 821, 824 (1987) (if appellant's allegations are correct, then it was not negligent and "there is no need for indemnity.").

**18.** 9 SETON HALL L.REV. at 300.